**FILED**

OCT 2 2 2002

**CLERK, U.S. DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY F. STANLEY,

      Petitioner,                  No. CIV S-95-1500 FCD GGH P

      vs.                         **DEATH PENALTY CASE**

JEANNE S. WOODFORD,

      Respondent.             <u>ORDER</u>

_____/

*Introduction and Summary*

        Obstructing his federal habeas corpus proceedings every step of the way,

petitioner, Gerald Stanley [not his appointed counsel] continues his, now-I-want-to-proceed–

now-I-don't, tactics which have plagued this case from its inception. The undersigned must once

more determine whether petitioner has authorized the amended habeas petition, signed by his

counsel, filed after exhaustion of state remedies. <u>See</u> <u>Deutscher v. Angelone</u>, 16 F.3d 981 (9th

Cir. 1994).

        Because petitioner completely lacks credibility based on the record of this case

with respect to his desire not to proceed, and conversely, because his presently appointed counsel

credibly demonstrate that petitioner desires to proceed, the court finds the amended petition to be

authorized. The court agrees with the well written, well reasoned argument of counsel to this

1


effect.[1]  Finally, the court orders that purported counsel Jack Leavitt not be authorized to substitute into this case, and also, that he refrain from filing further papers in this case.

*Facts*

A complete chronicling of the facts in this case is not possible given the voluminous number of letters etc. filed by petitioner and the nature of the proceedings themselves.  However, a summary of the facts must be related here at some length because these facts unequivocally establish petitioner's lack of credibility.  Some of the facts are taken from the undersigned's Findings and Recommendations of January 7, 2000, adjudicating respondent's motion to dismiss on account of unauthorized petition.

If the state proceedings could be classified as extraordinary, the federal habeas proceedings should be classified as bizarre.  These federal habeas proceedings commenced with a letter from petitioner stating that he wished no more appeals in this case; he desired an execution date; and he would "not change his mind."  Letter of August 14, 1995.  Of course, petitioner did nothing but change his mind back and forth, during these federal proceedings.  Petitioner has complained about every attorney and jurist who has been involved in this case.  Petitioner has threatened to kill some of his attorneys and their family members; he has routinely charged before the Ninth Circuit and elsewhere that the participants in this case, including the presiding judges, have accepted bribes for reasons which seem to change with the seasons.  It was not until this court refused to reply to any more Stanley correspondence, and appointed his final set of attorneys, that this case proceeded toward adjudication.

As indicated above, this case started unevenly when petitioner filed a letter that commenced the federal habeas proceedings on August 13, 1995—the petition not to file a petition.[2]  This "petition" was signed by Stanley.  Three days later, August 17, 1995, petitioner

---

[1]  The court does not, and need not, make any findings on petitioner's competence herein.

[2]  Stanley had also filed an abortive petition in federal court on January 11, 1990, in which he alleged, inter alia, his family's desire to kill his attorney in the state proceedings.

1   Stanley filed a "petition" alleging that his state appeal attorney stole petitioner's personal

2   property, took money from petitioner's mother, and failed to file a state habeas petition on "clear

3   cut habeas issues." Petitioner also accused his warden and others of stealing his legal notes from

4   his cell. Petitioner soon thereafter changed his mind, and again informed the court that he did

5   not desire any further review of his case. The federal action was stayed on September 26, 1995,

6   due to the pendency of further state proceedings as well as a petition for certiorari before the U.S.

7   Supreme Court. It was reopened on November 14, 1995.

8           Appointment of counsel in this case became muddled when the deputy state

9   public defender, Virginia Lindsey, purported to file for appointment of counsel and stay of

10  execution on Stanley's behalf on November 30, 1995. Thereafter, the district judge on January

11  25, 1996, stayed the execution of petitioner.

12          Several other "petitions" were thereafter filed, some of which indicated Stanley's

13  desire not to proceed with federal proceedings. The district judge assumed direct control over

14  the case, and eventually scheduled a hearing to determine whether petitioner should be allowed

15  to terminate his federal proceedings. At this point an Asst. Federal Defender had been

16  temporarily appointed to represent petitioner, and afterwards, an experienced habeas attorney,

17  Andrea Miller, was appointed. Stanley soon expressed problems with both of these counsel.

18  Nevertheless, the district judge appointed a court expert, and held an evidentiary hearing on

19  petitioner's competency to withdraw from these federal habeas proceedings. Prior to final

20  resolution of that hearing, but after the district judge had expressed a tentative opinion

21  confirming petitioner's competency, petitioner, in open court, expressed his desire to continue

22  with the federal habeas proceedings, and on November 19, 1996, present counsel (Mark Olive

23

24  _____

25  However, due to the pendency of his state proceedings, the district court abstained from ruling on
    this petition. The Ninth Circuit ruled that an improper person had been named as respondent and
    remanded with instructions to dismiss if the proper respondent was not named. <u>Stanley v.</u>
26  <u>California Supreme Court</u>, 21 F.3d 359 (9th Cir. 1994). This case was later dismissed.

1   and the Federal Defender) were appointed for petitioner.[3]  At that point, control of the

2   management of the case passed back to the undersigned.

3           A scheduling order was issued on November 27, 1996, in which the undersigned

4   issued strict limits on petitioner's further communications with the court except through his

5   appointed counsel.  Petitioner's repeated attempts to file new petitions, or withdraw same, had

6   proven very disruptive.  Despite the ordered limitations, petitioner soon again, and often,

7   expressed his displeasure with appointed counsel as well as the undersigned, and even at one

8   point, sought, with the assistance of an attorney from the Bay Area, Jack Leavitt, a writ with the

9   Ninth Circuit for the withdrawal of his federal petition.  The writ was denied.  In an alternative

10  ruling, that court held:

11

12              When Stanley previously moved to discharge counsel and waive
                further proceedings, the court entertained his motion, ordered a
                competency hearing, only to have Stanley change his mind.
13              Despite being ordered to communicate with counsel not the court,
                Stanley, dissatisfied with every counsel appointed to him, has
14              barraged the district court with endless pro se pleadings.  Based on
                this record, the district court did not clearly err when it: (1) denied
15              Stanley's motions to discharge counsel and dismiss his petition...

16  Order, Stanley v. Hollows, No. 98-99034 (9th Cir. March 2, 1999).

17  _____

18          [3] [By Mr. Olive] in my discussions with Mr. Stanley, the petitioner, he has indicated to
    me that he does desire counsel...with respect to the writ that's pending in the Ninth Circuit
19  [seeking to terminate federal proceedings], it would be his intention to withdraw that writ and
    proceed in this court with appointed counsel.
20                                              ***
    [after counsel were then appointed]
21  [by the Court] Mr. Stanley, did you hear what Mr. Olive just said?
    Mr. Stanley: Yes, I did.
22  The Court: Do you agree?
    Mr. Stanley: I agree with Mr. Oliver at this point.
23                                              ***
    Mr. Olive: But I talked with him about the three things I'm interested in: Being his counsel,
24  appointing the Federal Defender as local cocounsel, and withdrawing the writ that's pending in
    the Circuit and proceeding with the case in this court with us appointed.  He has agreed to that,
25  and we wish he would address the court with respect to it.
    Mr. Stanley: That's correct.  I trust Mr. Olive.
26  Fed. RT, November 19, 1996 at 2-4.

1   See also e.g., writ denials of Feb. 20, 2002 (No. 02-70065); July 29, 2002 No. 02-72227.

2          An amended petition which contained unexhausted issues was filed, but not

3   signed by petitioner, in the fall of 1997.[4]  It was, however, signed and verified by petitioner's

4   counsel.  On January 8, 1998, the court ordered the filing of an "exhausted claims only" petition,

5   and set a schedule for motions to be heard on the merits of these exhausted claims.  The court

6   determined that it would be beneficial to continue to work upon the exhausted claims pending

7   exhaustion of the new claims even though the state proceedings would be ongoing with respect to

8   the new claims.  The rationale for not staying the federal action was set forth in the January 8

9   order.  The exhausted-claims-only petition was filed in federal court on January 22, 1998, and

10  again, this petition was signed by counsel—not by petitioner Stanley.  Soon thereafter on August

11  2, 1999, petitioner, through his counsel, filed an exhaustion petition before the California

12  Supreme Court.

13         On June 7, 1999, a hearing was held on respondent's motion for summary

14  judgment, including respondent's motion to dismiss for lack of an authorized petition.  The

15  motion to dismiss for lack of signed (authorized) petition was recommended denied on January

16  7, 2000, which recommendation was adopted by the district judge, the Honorable Frank C.

17  Damrell, on February 22, 2000.

18          The court finds itself in an odd quandary.  Generally, where a
            petitioner himself asserts that a petition is not authorized,
19          application of Lucky v. Calderon [86 F.3d 923 (9th Cir. 1996)]
            holding will result in a dismissal of a petition (perhaps only after a
20          competency hearings).  In this case, the petitioner himself, Stanley,
            strongly has asserted, at times, that he does not authorize the filing
21          of the petition.  Nevertheless, deeper scrutiny of the facts reveal
            that petitioner is not to be trusted in his purported non-
22          authorization, and that petitioner has engaged in a continuous,
            purposeful back-and-forth concerning whether he desires to
23          proceed with the petition.  Petitioner's ploy to place the habeas
            proceedings in perpetual paralysis by authorizing them to go
24          forward, and then withdrawing that authorization, is unavailing.

25  _____

26  [4] An initial, incomplete petition was filed on September 22, 1997, and soon thereafter, an
    amended petition adding medical claims was filed on October 20, 1997.

1      The credible evidence demonstrates that this action should go
2  forward. [then quoting from petitioner himself at the November 19,
    1996, hearing in which he affirmed his desire to terminate
    proceedings to withdraw his federal petition, and proceed with his
3  federal petition]

4  Findings and Recommendations filed January 7, 2000.

5      After further work on resolution of the summary judgment motion, the

6  undersigned notified the parties that he now believed the issues in federal court, and the issues to

7  be adjudicated on state exhaustion, were too intertwined to proceed.  (Memorandum, June 20,

8  2000). The case was informally stayed pending state exhaustion, and then formally stayed.  Order

9  of November 6, 2001.  Just before and during the stay period, petitioner Stanley would pepper

10  the court with letters and diatribes concerning his desire to withdraw all petitions; the

11  undersigned understands that the same tactic was used with the California Supreme Court—with

12  both petitioner proceeding pro se and being represented at times (again) for this withdrawal

13  purpose by Jack Leavitt.  See Notice filed January 4, 2002: "[O]n December 17, 2001, the

14  California Supreme Court terminated waiver proceedings, stating that this 'Court will not

15  entertain any further pro se requests by petition[er] to dismiss the petition....'"  See also

16  Respondent's Exhibit E.  Also during the stay period, petitioner filed innumerable petitions to the

17  Ninth Circuit misconduct panel on the undersigned, Judge Damrell and petitioner's attorneys.

18  An example of the increasingly vicious, rambling diatribe is taken from a letter lodged on June 7,

19  2000:

20      I've personally ordered family members in Sacramento to obtain
    Quin Denvirs, Joe Schlesingerers (sic), Frank Damrells, Greg
21  Hollows home addresses, phone numbers, names, ages, of all
    family members....I want one chance to stand up, end all
22  proceedings and suffer [?] execution date.  I want this court [Ninth
    Circuit] to look into attorney misconduct.  I admit I will try to kill
23  one of these attorneys or their family members very soon.

24      On July 29, 2002, the court was notified that all state proceedings had finally been

25  terminated adverse to petitioner.  See Notice of State Court Decision.  In this Notice, it was

26  related that petitioner had changed tracks once again, and now desired to proceed with his federal

1 petition.  The Notice reads: "Mr. Stanley has instructed his counsel immediately to begin

2 amending his existing federal habeas corpus petition.  Counsel are in the process of doing so...."

3 *The Notice was initialed by petitioner*.  The accompanying declaration of Asst. Federal Defender

4 Tim Schardl specifically reported:

5

6       2. ....On July 29, 2002, I traveled to San Quentin State prison to visit Mr. Stanley.  I went at Mr. Stanley's request.

7       3.  During the visit I showed Mr. Stanley the Notice of State Court Decision that I prepared for filing in the United States District Court.  I prepared the notice in response to telephone conversations

8 that I and Joseph Schlesinger had with Mr. Stanley, in which Mr. Stanley said he wanted his federal habeas corpus petition amended

9 to include all the claims recently decided by the California Supreme Court.  Mr. Stanley had asked us to amend his federal

10 petition within 30 days of the state court's decision.

      4. ....Knowing that Mr. Stanley can get upset when the case does

11 not progress along his desired timeline, I left blank the date specified in the notice for filing....

12       5.  After Mr. Stanley read the notice of state court decision, I pointed out that I left blank the date for filing the amendment.  I

13 offer (sic) Mr. Stanley the opportunity to fill in the date for filing the amendment.  I suggested August 29, 2002....

14       6.  *Mr. Stanley filled in the blank on the notice and initialed it.*

15 (Emphasis added)

16       In its order lifting the stay of federal proceedings, the court predicted that "such

17 approval [by petitioner] may be fleeting," and the court's expectations were not disappointed.  In

18 a figurative sense, the inked initials were barely dry, when the court received notice from

19 petitioner that his "name" and  "signature" had been "forged."  A Notice of Petitioner's

20 Request/Demand That No (Repeat, No) Amended Petition Be Filed On His Behalf, filed by

21 purported "pro bono retained attorney" Jack Leavitt soon followed on August 15, 2002.  Since

22 that time the court has received letters from Stanley himself  reinforcing his supposed desire not

23 to proceed in language that only Mr. Stanley can muster, e.g., : "This old Hollows senile coward

24 has continued to allow delays in this case [by not allowing petitioner to withdraw the petition]."

25 Letter of September 27, 2002.

26 \\\\\

1  *Discussion*

2        The undersigned first finds that petitioner Stanley has no present credibility on the

3  issue of whether he authorized the most recent federal amended petition to be filed.  Evidently,

4  petitioner learned from his state trial court proceedings that expressing conflicting viewpoints on

5  his competency, or in his instructions to his lawyers, could tie the courts in knots.  See also

6  Respondent's Exhibit B, C (examining psychiatrists/psychologists referencing petitioner

7  Stanley's propensity for disruptive conduct).  Petitioner initially attempted the same in federal

8  court with respect to withdrawing/reinstating petitions, and it worked for a time.  That time has

9  long since passed.  The court again finds petitioner's appointed counsel credible in their

10  statements that petitioner desires to proceed, and that he authorized the filing of the current,

11  operative amended petition.  The signature of his attorneys on the amended petition in light of

12  this record is sufficient.  <u>Lucky v. Calderon</u>, 86 F.3d at 925.

13        Further, the court adopts the rationale of petitioner's counsels' cited case of <u>St.</u>

14  <u>Pierre v. Cowan</u>, 217 F.3d 939, 949-950 (7th Cir. 2000):

15        There must be an end-point to a defendant's efforts repeatedly to
   waive and un-waive her rights.  Normally, that end-point occurs
16  when a court has before it reliable evidence that a waiver was, in
   the words of <u>Johnson v. Zerbst</u>, <u>supra</u>, an intentional
17  relinquishment of a known right, and that it was made under
   circumstances that drove home to the defendant the importance of
18  what she was doing.  In cases like the one the Eighth Circuit faced
   in <u>Smith v. Armontrout</u>, or in our case, not only the defendant but
19  society as a whole has a particularly strong interest in the regularity
   of the proceedings that are followed; there is no un-doing a
20  sentence of death once it is carried out. These proceedings will go
   forward more quickly, and they will conclude in a result
21  recognized by all to be legitimate, if the district courts follow the
   presumption Judge Arnold adopted and take a retraction of a
22  waiver as the final word.  In essence, this is what we have done in
   this case, when we decided to take St. Pierre's latest motion to
23  waive his appellate rights along with the case.  We hereby deny
   that motion.

24

25        Therefore, the court finds for the final time that petitioner authorized his petition

26  to go forward.  The court will not entertain any further requests to find to the contrary, nor will

1  the court entertain prospective, related requests to withdraw the petition.

2          In addition, the court will not permit attorney Jack Leavitt to appear in this case.

3  He has aided petitioner in his quest to disrupt these proceedings, and the record in this case

4  reflects his only purpose for being "retained" by petitioner Stanley is to continue the disruption.

5  He has filed/prosecuted writs for this same purpose in this court, the California Supreme Court,

6  the Ninth Circuit—all have been denied.  It is also time to put an end to attorney Leavitt's

7  attempts to retract petitioner's retractions.  Further appearances by attorney Leavitt would be

8  adverse to his client's interests which this court has found require a continuation of these

9  proceedings.[5]  Enough is enough.  Further filings by attorney Leavitt in this case will result in

10  sanctions or contempt proceedings.

11  *Conclusion*

12          IT IS HEREBY ORDERED that:

13          1.  The amended petition filed on September 30, 2002, has been authorized by

14  petitioner;

15          2.  No further attempts by petitioner Stanley at withdrawing this authorization or

16  the petition itself will be considered by the court;

17          3.  Attorney Leavitt is not permitted to appear in this action, and he shall file no

18  further pleadings in this action; the Clerk shall serve this order on attorney Leavitt;

19  \\\\\

20  \\\\\

21  \\\\\

22  \\\\\

23

24          [5]  Eastern District Local Rule 83-182(e) requires approval of the court for a substitution of attorneys.  No such approval has been given, nor shall such approval be forthcoming.  "It is

25  well settled that courts have the power to enforce the rule against representing adverse interests to assure fairness and the proper administration of justice."  Smiley v. Director, OWCP, 984 F.2d

26  278, 282 (9th Cir. 1993) (also citing with approval cases where the right to choose one's counsel must be balanced with the need for effective administration of justice).

1           4.  Appointed counsel and respondent's counsel shall meet and confer and set a

2    hearing with the courtroom clerk of the undersigned on further scheduling in this case to be held

3    within 30 days of the filed date of this order.

4    DATED: October 22, 2002.

5

6                         UNITED STATES MAGISTRATE JUDGE
    GGH:gh:035

7    stan1500.auth

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

United States District Court
for the
Eastern District of California
October 22, 2002


* * CERTIFICATE OF SERVICE * *


2:95-cv-01500


Stanley

    v.

Calderon

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  October 22, 2002, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Jerry F Stanley                        VC/GGH
        C-80900
        SQSP
        San Quentin State Prison
        San Quentin, CA  94974

        Mark Eliot Cutler
        Federal Defender
        801 K Street
        Suite 1024
        Sacramento, CA  95814

        Mark E Olive
        NOT ED-CA ADMITTED
        Law Offices of Mark E Olive
        320 West Jefferson Street
        Tallahassee, FL  32312

        Jack Leavitt
        Law Offices of Jack Leavitt
        1065 A Street
        Suite 208
        Hayward, CA  94541

        Ruth Margaret Saavedra
        Attorney General's Office for the State of California

PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

William George Prahl
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Jack L. Wagner, Clerk

BY: _____
    Deputy Clerk