

FEB 1 0 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD F. STANLEY,

        Petitioner,                 No. CIV S-95-1500 FCD GGH P

        vs.

JEANNIE WOODFORD,          **DEATH PENALTY CASE**

        Respondent.            <u>ORDER</u>

_____/

*Introduction and Summary*

      Petitioner's counsel of record, Mark Olive, Joseph Schlesinger, and Tim Schardl (hereafter "OSS") have brought a motion for contempt or sanctions against petitioner's psuedo-counsel, Jack Leavitt. The motion arises from the undersigned's order of October 22, 2002, in which the court ordered that Jack Leavitt would not be permitted to appear in this case and that he should make no further filings in this case. At hearing on January 8, 2004, the court found that Mr. Leavitt had acted in bad faith in making further filings in this case which warranted sanctions under the inherent authority of this court or 28 U.S.C. § 1927. OSS were ordered to provide the court the hours that they had spent in preparing and making the motion. That computation has been filed; objection to the computation has been made by Leavitt.

\\\\\

1

1    For the reasons stated at hearing, and for those set forth herein, Jack Leavitt is

2  sanctioned in the amount of $10,356.00.  Payment is to be made as more fully described herein.

3  Further violations of the October 22 order shall result in contempt proceedings.  Mr. Leavitt is

4  again admonished not to make any filings in this case or otherwise make any appearances.[1]

5  *Facts*

6    The court will not repeat the entire rationale of the October 22, 2002 order.

7  Suffice it to say that the order detailed petitioner Stanley's manipulative conduct throughout this

8  lengthy capital habeas corpus process, that is, his constant back and forth about

9  withdrawing/authorizing his petition, his continuous, fabricated conflicts with counsel, his

10  nonsensical complaints to the Ninth Circuit and elsewhere about counsel and the court

11  giving/receiving bribes, and his threats to harm counsel and others.  More recently, petitioner has

12  attempted bargaining with the court and others over the burial location of a person murdered by

13  petitioner.  The court further found in the October 22 order that attorney Leavitt had participated

14  with petitioner in his manipulations.

15

16    In addition, the court will not permit attorney Jack Leavitt to
    appear in this case.   He has aided petitioner in his quest to disrupt
    these proceedings, and the record in this case reflects his only

17    purpose for being "retained" by petitioner Stanley is to continue the
    disruption.  He has filed/prosecuted writs for this same purpose in

18    this court, the California Supreme Court, the Ninth Circuit—all
    have been denied.  It is also time to put an end to attorney Leavitt's

19    attempts to retract petitioner's retractions.  Further appearances by
    attorney Leavitt would be adverse to his client's interests which

20    this court has found require a continuation of these proceedings.[2]

21  _____

22    [1] Of course, Leavitt may seek reconsideration of this order without violating the terms of
  this or the October 22, 2002 order as he well understands.

23

24    [2] [from October 22 order] Eastern District Local Rule 83-182(e) requires approval of the
  court for a substitution of attorneys.  No such approval has been given, nor shall such approval be
  forthcoming.  "It is well settled that courts have the power to enforce the rule against

25  representing adverse interests to assure fairness and the proper administration of justice." Smiley
  v. Director, OWCP, 984 F.2d 278, 282 (9th Cir. 1993) (also citing with approval cases where the

26  right to choose one's counsel must be balanced with the need for effective administration of

1          Enough is enough.  Further filings by attorney Leavitt in this case
2          will result in sanctions or contempt proceedings.

3  October 22, order at 9.

4  Leavitt was ordered to refrain from appearing in this case as well as to refrain from filing any

5  further pleadings in the case.

6        The character of Leavitt's purported representation was again shown when he

7  sought reconsideration of the undersigned's order, accusing the undersigned of bias without any

8  basis in fact: "I have heard–but do not know– that the Magistrate Judge is a close personal friend

9  and regular golfing partner of Quin Denvir, the Federal Defender whose conduct Stanley has

10  been attacking."  Leavitt's request for reconsideration was denied both by the undersigned and by

11  the district judge.

12        On May 20, 2003, attorney Leavitt wrote a letter to the assigned district judge in

13  this case, the Honorable Frank Damrell, among others, in which he identified himself as

14  Stanley's "retained pro bono attorney since 1998," and he requested that "someone with

15  authority" pay attention to Stanley's requests that Stanley be permitted to "accept the judgment

16  imposed against him."  On October 23, 2003, Leavitt again wrote to Judge Damrell in which he

17  identified himself as the true legal representative of petitioner Stanley, asked to be recognized as

18  Stanley's true legal representative, and again made requests on behalf of Stanley that Stanley be

19  given an appearance in court to relay his requests in this case in person.

20        OSS's present contempt/sanctions motion followed, but was precipitated by more

21  than these appearances and filings.  Evidently, Leavitt had been identifying himself as Stanley's

22  counsel to San Quentin authorities and the district attorney of Tehama County from whom he

23  was seeking assistance in having Stanley's petition in federal court withdrawn.  Held out as a

24  \\\\\

25  _____

26  justice).

1   carrot to obtain the district attorney's influence was Stanley's supposed willingness to disclose

2   the body of a person who he murdered.  Petitioner's counsel of record indicate that Leavitt is

3   undermining present counsels' representation.

4                   The court found at hearing that the letter filings violated this court's order.[3]  At

5   hearing, the court inquired of Mr. Leavitt why he had made the May 20 and October 23 filings.[4]

6   Aside from attempting to have the undersigned state that the present proceedings were a

7   contempt hearing, and not one for sanctions as had been decided by the court, and initially

8   proffering, but later abandoning, a contention that "district court" was something different from

9   "magistrate judge" court, Leavitt could only muster that it was his duty as Stanley's lawyer to

10  report a "harmful situation" lest he (Leavitt) "abandon his client."  Leavitt sought merely to

11  reargue his position that he was Stanley's real lawyer and the court should recognize him as such.

12  Thus, the undersigned found at hearing not only that Leavitt had violated the October 22 order

13  but that he had done so in bad faith.

14  *Disposition*

15                  Mr. Leavitt argued, at least initially, that he doubted the undersigned had any

16  authority to preside in this case.  The present case is a habeas corpus case brought pursuant to 28

17  U.S.C. § 2254.  The jurisdictional statute for magistrate judges specifically authorizes magistrate

18  judges to conduct proceedings and recommend dispositions on dispositive matters, 28 U.S.C. §

19  636(b)(1)(B), as do the Habeas Corpus Rules– Rules– Section 2254 Cases, Rule 10.  The local

20  rules of this court continue with the reference of habeas corpus cases to magistrate judges, E.D.

21  _____

22          [3] There was no doubt that Leavitt had made an appearance with his filings and requests,
    and had filed "pleadings" seeking relief on behalf of his "client."  Moreover, the order expressly
23  held that Leavitt would not be permitted to make any future filings of any sort.

24          [4] Although Leavitt initially attempted to show his confusion with the order by his request
    for reconsideration, nothing in OSS's motion indicated that they were seeking sanctions because
25  of Leavitt's seeking reconsideration.  Denying Leavitt the right to seek reconsideration of the
    October 22 order would have been decidedly inappropriate—and Leavitt was not confused about
26  this.

4

1   Cal. L.R. 72-302(c)(17).  The docket in this case reflects the reference of this case to the

2   magistrate judge.[5]  There can be no doubt that the undersigned presides in this case with the

3   district judge making the final case dispositive decisions.

4              Next, Mr. Leavitt objects to the nature of these proceedings in that magistrate

5   judges may not conduct contempt proceedings.  Although Leavitt is incorrect, see 28 U.S.C. §

6   636(e), the undersigned determined that the present matter was more appropriately adjudicated

7   under the lesser sanctions authority of the court, specifically, the court's inherent authority and

8   28 U.S.C. § 1927.  Leavitt believes that all sanctions are a form of contempt, but his conclusion

9   is fallacious.  While contempts are often synonymously linked with sanctions, not all sanctions

10  involve contempts or the contempt process.  Cunningham v. Hamilton County, 527 U.S. 198,

11  206-07, 119 S. Ct. 1915, 1921 (1999) (sanctions under the rules or statutes governing courts are

12  different from and derive from different authority than contempt); Chambers v. NASCO, 501

13  U.S. 32, 46, 111 S. Ct. 2123, 2133 (1991) ("The imposition of sanctions in this instance

14  transcends a court's equitable power concerning relations between the parties and reaches a

15  court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial

16  authority without resort to the more drastic sanctions available for contempt of court and

17  mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'"); B.K.B.

18  v. Maui Police Dept. , 276 F.3d 1091, 1107 (9th Cir. 2002) (quoting NASCO).  Moreover, if

19  Leavitt were correct, magistrate judges would not have "order" authority to impose sanctions

20  under the rules, but they certainly do.  Grimes v. City and County of San Francisco, 951 F.2d

21  236, 240 (9th Cir. 1991) (again distinguishing rule based sanctions from contempt); Maisonville

22  v. F2 America, Inc, 902 F.2d 746, 748 (9th Cir. 1990).  Further, Leavitt will have the ability to

23  seek reconsideration of this sanctions order from the district judge.

24

25          [5] At one time while he was assigned to the case, Judge Levi had withdrawn the reference
    to personally conduct petitioner's competency hearing, but after that hearing, the case was
26  referenced back to the undersigned.

1    Finally, the court declines to presently adjudicate herein sanctions for Leavitt's

2    conduct in places and matters outside of this court's October 22, 2003, order.  It may well be that

3    Leavitt is acting unethically by his continued assertions to outside authority figures that he

4    "represents" petitioner in his federal habeas action, or can otherwise speak for petitioner in

5    matters touching upon the present habeas petition.  However, the court presently defers the

6    adjudication of such to State Bar authorities if petitioner's counsel of record desire to file such a

7    complaint.  If the court were to later determine, after submission of further motions, evidence and

8    perhaps an evidentiary hearing, that Leavitt's actions outside this court are intended to hinder or

9    thwart the efficient adjudication of this case, the court may reconsider its decision not to impose

10   sanctions for actions indirectly related to this case and/or proceed in contempt against Mr.

11   Leavitt.[6]

12       Having found Mr. Leavitt liable for sanctions under the court's inherent authority,

13   see Chambers v. NASCO, supra, and 28 U.S.C. § 1927,[7] the court must determine the

14   appropriate sanctions.  Indisputably, both sources of sanctioning authority permit the imposition

15   of attorneys' fees, and the court determined to impose such here.  The court required habeas

16   counsel to submit time accountings for the work done on this motion, and that recordation was

17   \\\\\

18

19   _____

20   [6] The undersigned will not issue detailed rulings on the numerous filings submitted by
     Mr. Leavitt.  In sum, Leavitt's  Objections to Purported Evidence...., Request for Documents,
21   Request for Attendance of Gerald F. Stanley At Hearing were and are denied.  The court strikes
     the purported waiver of attorney-client privilege by petitioner.  The jurisdictional basis for the
22   undersigned's presiding at the sanctions motion has been discussed in the text.

23   [7] Leavitt does not argue that since he is not counsel for a party in this action, he cannot be
     sanctioned, and he is correct not to argue such.  28 U.S.C. § 1927 applies to "any attorney"
24   "admitted to conduct cases in any court of the United States" who "multiplies the proceedings in
     any case unreasonably or vexatiously"; the statute does not just apply to attorneys for a party.
25   Similarly, the Supreme Court made clear in Chambers v. NASCO that the court's inherent
     authority to control its processes went beyond the mere confines of conduct committed by the
26   parties before the court.  Id., 501 U.S. at 57, 111 S.Ct. At 2139 and 501 U.S. 40 (n.5), 111 S.Ct.
     at 2130.

1    submitted on January 20, 2004.[8]  Between three counsel, a total of 109 hours were expended.

2    The primary drafter of the motion and reply, AFD Tim Schardl, expended 83.7 hours with the

3    remainder divided between counsel Olive and Schlesinger for oversight work.

4          Mr. Leavitt filed his opposition to the amount of fees claimed arguing primarily

5    that the amount of time expended by petitioner's counsel was excessive and spent on irrelevant

6    matters.  With the stated exception below, the court does not find either assertion to be correct.

7    However, after closely reviewing Mr. Leavitt's opposition, the court finds that the total number

8    of oversight hours should be reduced to five.  Thus, the total hours to be compensated equals

9    88.7.  The hourly rate to be utilized by the court is that set forth for death penalty cases in

10    general, $110.00/hour, resulting in a total attorney's fees sanction of $9,757.00.  The expenses

11    incurred by counsel (investigator time of 7 hours at $75.00 per hour–$525.00– plus mileage of

12    $74.00) are also awarded.

13    *Conclusion*

14          Accordingly, Mr. Leavitt shall pay to the Federal Defender of this district, the

15    total amount of $10,356.00.  This payment is to be made within twenty days of the filed date of

16    this order, or, if Mr. Leavitt seeks reconsideration from the assigned district judge, within twenty

17    days after the district judge has issued a decision affirming this order, if that is the decision of the

18    district judge.

19    DATED: February /___, 2004.

20

21                      GREGORY G. HOLLOWS
                       U.S. MAGISTRATE JUDGE

22    GGH:gh:035
    stan1500.sanc

23

24

---

25       [8]Mr. Leavitt intimates that the recordation was not timely filed because it was filed twelve days after the court's oral ten day order given on January 8.  However, the recordation was timely

26    because under Fed.R.Civ.P. 6(a) weekends and holidays are excluded from computation when the prescribed time to satisfy the order is less than eleven days.

United States District Court
for the
Eastern District of California
February 10, 2004


* * CERTIFICATE OF SERVICE * *


2:95-cv-01500


Stanley

   v.

Calderon

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  February 10, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.


    Mark Eliot Cutler              VC/GGH
    Federal Defender
    801 I Street
    Third Floor
    Sacramento, CA  95814

    Mark E Olive
    NOT ED-CA ADMITTED
    Law Offices of Mark E Olive
    320 West Jefferson Street
    Tallahassee, FL  32312

    Ruth Margaret Saavedra
    Attorney General's Office for the State of California
    PO Box 944255
    1300 I Street
    Suite 125
    Sacramento, CA  94244-2550

    William George Prahl
    Attorney General's Office for the State of California
    PO Box 944255
    1300 I Street
    Suite 125
    Sacramento, CA  94244-2550

Jack Leavitt
Law Offices of Jack Leavitt
1065 A Street
Suite 208
Hayward, CA 94541


                                        Jack L. Wagner, Clerk

                                BY: _____
                                        Deputy Clerk