UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GERALD F. STANLEY,

        Petitioner,

    v.

EDDIE YLST, Acting Warden
of the California State
Prison at San Quentin,

        Respondent.

NO. CIV. S-95-1500 FCD GGH P

DEATH PENALTY CASE

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the parties' objections[1]
to the magistrate judge's findings and recommendations ("F&R") of
May 31, 2006, finding respondent's attorney Raymond Brosterhous
("Brosterhous") "engaged in overreaching (misconduct) in

---

[1]    Following grants of extensions of time to respond, the
parties filed their respective objections and replies thereto on
July 17, 2006 (Docket #s 736, 737 [respondent's objections and
petitioner's objections]), July 26, 2006 (Docket #740
[respondent's reply]) and August 18, 2006 (Docket #752
[petitioner's reply]).

conducting interviews with jurors, aka the 2000 interviews, and
that such overreaching was prejudicial in the case of [one] juror
[Mitts]."[2]  (F&R, filed May 31, 2006, at 3:1-3.)  On the basis of
that finding, the magistrate judge recommended that with respect
to juror Mitts, "all statements, declarations, and testimony
procured commencing with the 2000 Brosterhous interview, and
continuing to the present, should be excluded.  The matter of
juror misconduct should be decided on the Mitts' 1997 declaration
pursuant to appropriate legal standards."  (Id. at 31:16-19.)[3]

        By his objections, respondent challenges the procedure used
by the magistrate judge to render his findings, the asserted
basis for jurisdiction over these proceedings, and the ultimate
findings of misconduct, arguing they are not supported by the
evidence.  Respondent contends that this court must perform a de
novo review of the F&R and under that standard of review, the
magistrate judge's findings must be reversed.  Petitioner, on the
other hand, asks this court to find additional misconduct by
respondent based on alleged suppression of evidence,
misrepresentations to the court, and further misconduct during
juror interviews in 2006; petitioner also contends that
additional remedies are warranted with respect to jurors Herbert

---

        [2]    The undersigned set the matter for hearing on September
29, 2006; however, after review of the papers, and finding that
oral argument would not be of material assistance, the court
vacated the hearing and ordered the matter submitted on the
briefs (E.D. Cal. L.R. 78-230(h)).  (Minute Order, filed Sept.
26, 2006.)

        [3]    The effect of the magistrate judge's recommended
exclusion of evidence is presently unknown, as the magistrate
judge has not yet issued findings and recommendations with
respect to petitioner's habeas petition and specifically his
juror misconduct claim.  (Id. at 31:10-12.)

and Robinson.  In opposing respondent's objections, petitioner argued the applicable standard of review is "clearly erroneous or contrary to law," pursuant to Fed. R. Civ. P. 72(a) (Docket #752 at 25-28);[4] however, in his own objections, petitioner asks the court to "consider [his arguments] *de novo*."  (Docket #737 at 2:7.)  Obviously, petitioner cannot have it both ways.

For the reasons set forth below, the court finds that the correct standard of review is that of Rule 72(a).  28 U.S.C. § 636(b)(1)(A).  Under that standard, the court need only ask whether the magistrate judge's findings of fact are clearly erroneous or his conclusions contrary to law.  Id.  Applying that inquiry here, the court finds no error in the magistrate judge's findings of fact or conclusions of law.  Ultimately, his findings of fact were based on credibility determinations, following an extensive hearing, and those determinations are well-supported by the record (namely, the audiotapes and transcripts of the juror interviews by Brosterhous), and provide sufficient justification for the exclusion of evidence as to juror Mitts.

**BACKGROUND**

On March 28, 2006, this court granted respondent's request for reconsideration of the magistrate judge's January 5, 2006 order.[5]  In that order, the magistrate judge:  (1) permitted petitioner to call Brosterhous as a witness at an April 17, 2006 hearing on petitioner's prosecutorial misconduct motion and

---

[4]     Unless otherwise noted, all further references to a "Rule" are to the Federal Rules of Civil Procedure.

[5]     The facts leading up to this motion are set forth in detail in the court's March 28, 2006 order and are incorporated herein by reference.

3

habeas claim of juror misconduct and (2) barred Brosterhous from conducting the examination of the juror-witnesses to be called on petitioner's habeas claim of juror misconduct.  (Docket #672.) The court found that petitioner had not demonstrated a compelling need to call Brosterhous as a witness, and that disqualification of Brosterhous from the hearing would be improper until a judicial finding of prosecutorial misconduct was made.  (Id. at 12:11-13.)  In that regard, the court directed that the issue of "prosecutorial misconduct must be decided [by the magistrate judge] in advance of an evidentiary hearing on petitioner's habeas claims."  (Id. at 12:14-16.)  With regard to the procedures to be employed by the magistrate judge, the court directed that:

> [T]he magistrate judge should entertain a proffer by petitioner of the evidence of prosecutorial misconduct by DAG Brosterhous. The magistrate judge, in his discretion, may decide what is sufficient evidence for said proffer and allow rebuttal by respondent.
> After due consideration of the proffer, respondent's rebuttal, and other evidence the magistrate judge considers relevant and necessary, he shall exercise his sound discretion and make a finding he deems appropriate. Such a finding could include a denial or grant of petitioner's prosecutorial misconduct motion or other findings including the need for an evidentiary hearing on the issue.

(Id. at 12:17-13:1.)  The court noted that it "makes no findings . . . regarding the nature of such a hearing; the magistrate judge shall decide what evidence is necessary and admissible for any such proceeding."  (Id. at 13 n.6.)

After consideration of petitioner's proffer, the magistrate judge determined that an evidentiary hearing was required on the prosecutorial misconduct motion in order to hear from the jurors themselves.  The magistrate judge found that:

4

> the transcript and tapes of the Brosterhous interviews were insufficient to determine the motion.  While the tapes and transcripts clearly showed the 'what' of the changes [in testimony], the 'whys' remained elusive. . . . Moreover, the reasons why the jurors changed/modified/ clarified their declarations were pertinent to the prejudice issue . . . i.e., whether actions of Brosterhous, if found to be misconduct, had a substantial, prejudicial effect on the jurors such that their declarations were changed afterwards.

(F&R at 4:7-9, 11-14.)  The testimony of the jurors, however, was also required for the evidentiary hearing on petitioner's juror misconduct claim.  As such, on April 17, 2006, at the commencement of the evidentiary hearing on petitioner's habeas claims (including among other claims, his juror misconduct claim), the magistrate judge indicated that he did not want to require the jurors to testify twice to the identical facts.  (Id. at 5:5-8.)[6]

Thus, the magistrate judge ordered that the testimony to be taken on petitioner's juror misconduct claim would "do double duty" for petitioner's *lawyer* misconduct motion.  (F&R at 5:11-12.)  During the consolidated evidentiary hearing, the magistrate judge permitted Brosterhous to be present at all times, to argue the case, and to conduct the examination of non-juror witnesses, but he precluded Brosterhous from conducting the examination of the juror witnesses.  (Id. at 5:12-15.)  During the hearing, both parties voiced various objections to the process, some of which were based on this court's March 28, 2006 order, but the

---

[6]      "The jurors had undergone interview after interview, and had executed declaration after declaration; if the court piled atop these interviews and declarations a requirement that they testify twice in court, an untoward burden would have been placed on the jurors, some of whom had to travel great distance to the court house."

1  magistrate judge denied the objections, finding that "no better

2  procedures [were] suggested." (<u>Id.</u> at 5:14-15.)

3                              **STANDARD**

4        As the magistrate judge expressly recognized in the F&R, the

5  exclusion of evidence relating to juror Mitts is not dispositive

6  of petitioner's juror misconduct claim, and it does not preclude

7  respondent from defending against the claim. (F&R at 31:4-12

8  [declining to strike respondent's answer and leaving the "effect

9  of the court's exclusion to be set forth in the [F&R] on the

10  merits of the juror misconduct claim"].)  Thus, in resolving a

11  *non*-dispositive pre-trial matter, the magistrate judge's instant

12  order is governed by the "clearly erroneous or contrary to law"

13  standard set forth in 28 U.S.C. § 636(b)(1)(A). <u>Maisonville v.</u>

14  <u>F2 America, Inc.</u>, 902 F.2d 746, 748 (9th Cir. 1990) (finding Rule

15  11 sanctions a non-dispositive pre-trial matter).[7]  As such, the

16  magistrate judge's order cannot be set aside or modified unless

17  the findings of fact are clearly erroneous or the conclusions are

18  contrary to law. Fed. R. Civ. P. 72(a); <u>Grimes v. San Francisco</u>,

19  951 F.2d 236, 239-40 (9th Cir. 1991).  The order should be

20  modified or set aside only if the reviewing court is left "'with

21  the definite and firm conviction,' that the [magistrate judge's]

22  key findings are mistaken." <u>Easley v. Cromartie</u>, 532 U.S. 234,

23

24        [7]     While the Ninth Circuit has not specifically ruled that
      a sanction excluding evidence which is not dispositive of a claim
25  is reviewed under Rule 72(a), other courts have so held.  <u>See</u>
      <u>e.g.</u>, <u>Benedict v. Zimmer, Inc.</u>, 232 F.R.D. 305, 313 (N.D. Iowa
26  2005) (order excluding evidence should be reviewed under Rule
      72(a) even where it could effect decision on summary judgment);
27  <u>Magee v. Paul Revere Life Insur. Co.</u>, 178 F.R.D. 33, 37 (E.D.
      N.Y. 1998) (discovery sanction precluding use of expert testimony
28  should be reviewed under Rule 72(a) "unless the sanction itself
      can be considered dispositive of a claim").

1  243 (2001) (citation omitted).[8]

2  **ANALYSIS**

3      The court preliminarily discusses below the magistrate

4  judge's finding that he has jurisdiction to issue the subject

5  sanction.  While neither party raised the issue, the magistrate

6  judge began his order discussing the relevant law as it pertained

7  to the court's authority to sanction parties or attorneys for

8  conduct which took place during *state* court proceedings.  As this

9  court agrees with the magistrate judge that jurisdiction lies to

10 exclude the evidence at issue, the court next considers

11 respondent's substantive objections.  Finally, the court

12 considers *certain* of petitioner's objections.[9]

13     **I.**    **Jurisdiction**

14       Not surprisingly, now that the *magistrate judge* raised the

15 question of the court's jurisdiction to issue a sanction for

16 Brosterhous' alleged misconduct, which originated in the state

17 appeal proceedings, respondent argues in his objections that the

18 court is without jurisdiction to sanction Brosterhous.

19

20     [8]  The court notes that it previously reviewed the
21 magistrate judge's related order of January 5, 2006 under the
   same standard.  (Docket #672.)

22     [9]  As he did before the magistrate judge, petitioner
   attempts in his objections to again expand the grounds for a
23 finding of misconduct.  Specifically, petitioner asks this court
   to find *additional* misconduct by respondent based on alleged
24 suppression of evidence, misrepresentations to this court in
   briefing and further misconduct by Deputy Attorney General Whalen
25 during juror interviews in 2006.  The magistrate judge did not
   consider these arguments, finding them outside the parameters of
26 petitioner's original motion which only challenged Brosterhous'
   "juror interview techniques" in 2000.  (F&R at 2:1-13.)  This
27 court agrees that the arguments are outside the scope of the
   motion, and accordingly, does not consider the arguments herein.
28 (Docket #737 at 7-13.)

Petitioner argues respondent has waived this argument because he did not raise the argument before the magistrate judge; however, a jurisdictional challenge is never waived and thus, the court considers respondent's argument herein.

In the F&R, the magistrate judge found that under the Ninth Circuit's decision in Western Systems, Inc. v. Ulloa, 958 F.2d 864 (9th Cir. 1992), this court has jurisdiction to sanction conduct that occurred in the state proceedings in this case. The subject conduct in this case occurred during the state court exhaustion process. Indeed, the declarations obtained as a result of the Brosterhous' interviews were initially filed in response to an order from the *California Supreme Court* directing respondent to file an informal answer to allegations of juror misconduct raised by petitioner. (Docket #672 at 3-5.)

In Ulloa, the Ninth Circuit affirmed a sanctions order levied by the federal district court against a party for activities that occurred in a Guamanian court. The magistrate judge disagreed with the decision, arguing that the Ninth Circuit misapplied relevant United States Supreme Court authority (Chambers [see F&R at 8]) and decided the case contrary to other circuits, but noted nonetheless that the case was binding authority and must be applied. Respondent argues in his objections that the magistrate judge was not bound to apply Ulloa because it is distinguishable as it involved a civil action, not a habeas case, and/or subsequent United States Supreme Court authority has called Ulloa into question.

Neither of respondent's arguments are persuasive. First, that Ulloa is not a habeas case is not determinative of the

8

1   issue; the question here involves *attorney* misconduct which is

2   not impacted by the type of case at issue.   Second, respondent's

3   additional Supreme Court authorities, <u>Degen</u> and <u>Kokkonen</u> (Docket

4   #736 at 34:15-25), do not effect the analysis as they did not

5   involve the instant question, whether the court may sanction a

6   party for conduct occurring in *other* proceedings.   <u>Degen v.</u>

7   <u>United States</u>, 517 U.S. 820, 822 (1996); <u>Kokkonen v. Guardian</u>

8   <u>Life Insur. Co. of Am.</u>, 511 U.S. 375, 380 (1994).   Only <u>Ulloa</u>

9   speaks directly to that issue, and the magistrate judge properly

10  applied it as binding authority permitting jurisdiction over this

11  matter.

12       **II.   Respondent's Objections**

13            **A.   The Evidentiary Hearing**

14       As an initial matter, respondent objects to the procedure

15  used by the magistrate judge to resolve petitioner's

16  prosecutorial misconduct motion and juror misconduct habeas

17  claim; namely, the consolidated hearing on the issues in which

18  Brosterhous was not permitted to examine the juror-witnesses.

19  Respondent contends the consolidated hearing violated this

20  court's March 28, 2006 order.

21       The court disagrees.   While said order contemplated the

22  potential resolution of the motion without an evidentiary

23  hearing, the court also recognized that the magistrate judge may

24  find that an evidentiary hearing was necessary.   (Docket #672 at

25  12:16-13:1.)   He did.   (F&R at 4-5.)   The court's order did not

26  impose any requirements with respect to that hearing.   (Docket

27  #672 at 13 n.6 ["the magistrate judge shall decide what evidence

28  is necessary and admissible for any such proceeding"].)

The magistrate judge determined that he could not properly rule on the prosecutorial misconduct motion without hearing from the jurors themselves.  Because the jurors' testimony was also required for the evidentiary hearing on petitioner's juror misconduct claim, the magistrate judge considered the issues at one consolidated hearing in order to prevent the jurors from having to testify twice to the *same* facts.  The court cannot find this procedure in error.

Admittedly, the court previously envisioned the possible resolution of the prosecutorial misconduct motion prior to the evidentiary hearing on petitioner's habeas claims; however, once the magistrate judge determined an evidentiary hearing was necessary on the motion, he was, indeed, faced with a "quandary." On the one hand, the magistrate judge sought to comply with both the "letter and spirit" of the court's prior order but at the same time, he was rightfully weighing the interests of the juror-witnesses.  Although ultimately, under the procedure employed by the magistrate judge, Brosterhous was precluded from examining the juror witnesses himself (in a sense, a "disqualification"), the court finds significant that he was able to be present during the jurors' testimony (and presumably assisted respondent's counsel examining the witnesses during their testimony), was permitted to examine the non-juror witnesses, and he made arguments to the magistrate judge.  Under the circumstances, this was a reasonable procedure which did not violate the express provisions of the court's order.

### B.   Misconduct Findings

The magistrate judge found that with respect to some of the jurors (both guilt/penalty and competency trial jurors) Brosterhous "exceeded the bounds of propriety in his interviews." (F&R at 15:18.)   Respondent does not object to the magistrate judge's description of the relevant law (id. at 9-15) but rather contends that the evidence does not support a finding of misconduct under that law.   After four days of hearing testimony on the issue, the magistrate judge concluded: (1) in light of the circumstances of the interviews ("the sobriquet of juror *misconduct* brought about by *the jurors'* previous statements to petitioner's investigators"), Brosterhous knew, or should have known, that his interviews had the high potential, if done improperly, to influence jurors; (2) it was not Brosterhous' tone in the interviews that exceeded the bounds of propriety, rather it was his "setting up" of the jurors with gratuitous characterizations; and (3) finally, his comments "would make the ordinary person feel guilty, foolish, or fearful, or all three about what they had stated previously." (Id. at 15-16.)   The magistrate judge provided several examples of such conduct in the F&R. (Id. at 16-20 [describing interview-questioning of jurors Mitts, Forbes and Robinson].)

He summarized his findings as follows:

[E]specially with respect to juror Mitts, the inference
to be drawn is that Brosterhous knew he needed to have
the jurors retract parts of their declarations (he
essentially told Mitts that her declaration, if its facts
were accepted at hearing, would cause a new trial) and was
not willing to simply see if that would happen without
lengthy, designed-to prejudice preambles, and without
non-loaded questions. Certainly, he should have known
that his preambles and questions were directed towards

unduly influencing the jurors/witnesses.  Brosterhous also should have known that his government position and that of those persons who accompanied him made it imperative that he zealously guard against his introductions and questions having a biasing effect on the witnesses.  Even Investigator Hagan [who accompanied Brosterhous to many of the interviews] related at evidentiary hearing that he did not believe it to be a good idea to offer opinions when conducting a juror misconduct investigation.

(Id. at 21:3-13.)

Respondent contends that in reaching these findings the magistrate judge ignored other important facts which weigh against a finding of misconduct.  First, respondent points to numerous examples of alleged bad acts by *petitioner's* investigators in interviewing the subject jurors.  Certain of those jurors testified that petitioner's investigators did not correctly identify themselves as working for petitioner when they interviewed them, and several jurors testified that they believed petitioner's investigators acted dishonestly and engaged in questionable tactics when interviewing them.  (Docket #736 at 25.)  The conduct of petitioner's investigators, however, is not relevant to resolution of the instant motion.  Indeed, as this court noted previously, respondent has not moved for sanctions against petitioner.  The focus of the inquiry here is on *Brosterhous'* conduct.

In that regard, respondent argues the magistrate judge's factual findings are not well-supported because none of the testifying jurors stated they felt intimidated by Brosterhous or that his questioning influenced the statements they made in their declarations.  According to respondent, the "record simply does not support [the magistrate judge's] findings."  (Docket #736 at 26:20; 27.)

12

However, the F&R amply cites those portions of the record that *do* support the magistrate judge's findings. (see generally, Docket #714.)  Moreover, respondent ignores that the magistrate judge's findings were influenced by the *totality* of the jurors' testimony at the hearing.  Their credibility was assessed in light of their previous declarations and their present explanations for their change in testimony.  In the end, the magistrate judge determined that in the case of all jurors, except Mitts, Brosterhous' misconduct "either did not ultimately relate to a cognizable issue of juror misconduct, or did not appreciably cause changes in the jurors' declarations, or did not unduly influence the juror when they did make changes," and as such, sanctions with respect to these jurors was not warranted. (F&R at 22:8-11, 22-27.)

Respondent maintains that the result should have been the same for juror Mitts.  Regarding juror Mitts, the magistrate judge found, after hearing her testimony and that of petitioner's investigator Ballew, that: (1) Mitts volunteered, without influence from petitioner's investigators, the facts in her original declaration giving rise to the juror misconduct claim (*i.e.*, she had not disclosed during voir dire that she had been a victim of rape; at the time of the trial, she hated men; she lied during voir dire when she said she could be fair and impartial; she discussed the case proceedings with other persons prior to deliberations; and she read newspaper accounts of the proceedings); (2) to the contrary, her statements to Brosterhous recanting her prior concessions to misconduct, were pressured by Brosterhous' comments as demonstrated by the text of the 2000

13

interview (F&R at 28:3-18)[10]; and (3) at the hearing, Mitts
proffered no *legitimate* reason for the changes in her initial
declaration (id. at 29:1.), and any reasons she did provide, the
magistrate judge found incredible (id. at 29, 30 [finding
"overall Mitts testimony at evidentiary hearing lacked complete
credibility"). Under the applicable standard of review, the
court cannot second-guess this credibility determination. See
United States v. Bergera, 512 F.2d 391, 392, 394 (9th Cir. 1975).
Moreover, the court finds sufficient support in the record for
the magistrate judge's ultimate finding that "Brosterhous
overreached with [respect to juror Mitts] to the point where the
pressure involved substantially prejudiced petitioner in that
testimony favorable to petitioner was changed for illegitimate
reasons." (Id. at 30:12-14.)

As such, the court agrees with the magistrate judge that
exclusion of all evidence obtained subsequent to Mitts' initial
1997 declaration is required as the "taint [of the 2000
Brosterhous interview] remained thereafter."[11] (Id. at 30:15-

---

[10] For example, when Brosterhous told her of an inevitable
hearing in Butte County at which she would be the "star witness",
Mitts asked: "so what am I supposed to do about all of this."
When Brosterhous told her that ceratin "explanations" might get
her off the hook, she immediately retracted or did not recall
every previously conceded aspect of misconduct. The magistrate
judge found that while "[o]f course, Brosterhous did not tell
Mitts to make up the retractions . . . The point . . . is that
after improperly setting [her] up to fear the consequences of her
own misconduct, what did [Brosterhous] expect? Mitts was under a
powerful compulsion to disavow everything and avoid the
misconduct hearing." (Id. at 28:16-19.)

[11] The court notes that respondent has cited no authority
for his *passing* argument that the AEDPA precludes exclusion of
the subject evidence. While the AEDPA confines this court's
review of petitioner's habeas petition to the record before the
(continued...)

14

16.)

### III. **Petitioner's Objections**

#### A. **Juror Herbert**

Petitioner objects to the magistrate judge's no-prejudice conclusion regarding juror Herbert because at the evidentiary hearing Herbert testified, contrary to her prior declarations, that she was unsure of when she learned of the competency verdict, and she did not believe there had been any discussion of the verdict in the deliberations. Previously, Herbert declared that she learned of the competency verdict prior to resuming deliberations in the penalty phase.

Petitioner agrees with the magistrate judge that in her subsequent declaration for Brosterhous Herbert did not recant her original statements, but argues that her testimony at the hearing (for the first time), that she may not have known about the competency verdict until after the trial was over, was influenced by Brosterhous' interview techniques--the very same techniques the magistrate judge found unduly influenced juror Mitts' testimony.

The magistrate judge indicated in the F&R that he may, in later ruling on the merits of petitioner's juror misconduct claim, conclude based on Herbert's testimony at the evidentiary hearing, that she learned of the competency verdict after the penalty phase had completed. The magistrate judge is free to make this determination, as he heard Herbert's testimony, and may

---

[11](...continued)
state court, it does not address whether any such evidence in the record may be excluded or discounted in *this* court's review.

find it more credible than the statements provided to either petitioner's investigators or Brosterhous.  What is relevant to this motion is that the magistrate judge determined based on Herbert's failure to recant any of her original statements to Brosterhous, that Brosterhous cannot be found to have prejudiced petitioner as a result of the Herbert interview in 2000.  Indeed, at that point, Herbert continued to testify in a manner favorable to petitioner.  That Herbert changed her testimony at the evidentiary hearing cannot be as a result of Brosterhous' conduct as he did not prepare her for her testimony or conduct her examination.

**B.   Juror Robinson**

Petitioner also objects to the magistrate judge's no-prejudice finding with respect to juror Robinson, arguing that contrary to the magistrate judge's findings, (1) his original declaration did state a cognizable juror misconduct claim (with respect to the alleged surveillance of jurors), and (2) petitioner was prejudiced by Brosterhous' interview of Robinson because even if Robinson did not substantively change his testimony in the declaration provided to Brosterhous, Brosterhous turned Robinson, "a friendly witness" to petitioner into a "hostile one."  (Docket #737 at 17-18.)  Whether Robinson's testimony presents a cognizable juror misconduct claim is not for determination on this motion; that substantive issue will be decided in the first instance by the magistrate judge in his findings and recommendations on petitioner's habeas petition. Again, what is relevant to this motion is the magistrate judge's finding, which petitioner *agrees* with, that Robinson did not

16

"change in substantial ways" his testimony from his first declaration to the second declaration procured by Brosterhous. Accordingly, the court cannot find the magistrate judge's no-prejudice finding "clearly erroneous" as Brosterhous' overreaching, to the extent there was any, did not have an appreciable effect.  That the process of this motion has apparently turned Robinson into a "hostile" witness for petitioner is not grounds to rule in petitioner's favor on the motion.  To prevail, petitioner had to demonstrate a *prejudicial effect* as a result of Brosterhous' conduct.  None is present with respect to Robinson.[12]

///
///
///
///
///
///
///
///
///
///
///
///

_____

[12]     The magistrate judge did note that Robinson's hostility to petitioner and his counsel was in "no small part initiated by Brosterhous."  (F&R at 22:15-16.)  Thus, the magistrate judge recognized Brosterhous' impact on Robinson but for purposes of measuring the *legal* effect on petitioner's claims herein, there was no basis for a sanction as Robinson's substantive testimony was not impacted.

**CONCLUSION**

For the foregoing reasons, the court cannot find the magistrate judge's decision finding Brosterhous engaged in misconduct in the 2000 juror interviews and with respect to juror Mitts that the misconduct caused a prejudicial effect necessitating the exclusion of certain evidence, "clearly erroneous or contrary to law."  The magistrate judge's findings of fact and conclusions of law are supported by the record and by proper analysis, and accordingly, the court ADOPTS the May 31, 2006 F&R in full.

DATED: October 13, 2006  _____

                                        /s/ Frank C. Damrell Jr._____
                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE