IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD F. STANLEY,

        Petitioner,               No. CIV S-95-1500 FCD GGH P

    vs.

WARDEN OF SAN QUENTIN
STATE PRISON,                **DEATH PENALTY CASE**

        Respondent.         FINDINGS & RECOMMENDATIONS

_____/

*Introduction and Summary*

        The undersigned commences final adjudication of the operative petition on its merits by breaking out the juror misconduct competency trial issues.  As the text of the Findings and Recommendations indicate, the undersigned finds that Juror Mitts' misconduct requires the invalidation of the competency jury trial held in petitioner's underlying capital trial.  The undersigned also finds that a retrospective competency trial, while very problematic, should have its potential possibility or impossibility determined by state courts.

        The undersigned further recommends that the procedure in Odle v. Calderon, 238 F.3d 1084 (9th Cir. 2001), which held in abeyance the remaining claims to be adjudicated pending the competency re-trial, be employed herein.  That is, a partial, final judgment should be

1

entered pursuant to Fed. R. Civ. P. 54(b) on the guilt phase claims and competency trial claim of juror Mitts' misconduct.  The court will retain jurisdiction and hold in abeyance remaining competency trial and penalty phase claims in this case which would be mooted by an adverse-to-respondent competency adjudication on the juror misconduct claim.  The undersigned recommends such because time is of the essence in holding any possible re-trial on petitioner's competency.

Although the guilt phase claims should be adjudicated prior to partial judgment in this case, the undersigned presently breaks out the Mitts' juror misconduct claim within the competency trial issues for two reasons:  the issues are complex and should not be contained within a massive, final Findings and Recommendations as it is easily severable from all the other issues; (2) the parties and the district court can be finally briefing and deciding the Mitts' juror misconduct competency trial issue while the undersigned works on the remainder of the guilt phase issues in this case.  There is no point in having habeas counsel completely idle awaiting a decision by the undersigned on all guilt phase issues, necessarily taking a good deal of time.

*Background to Competency Trial Juror Misconduct Issues*

As all are aware, petitioner's underlying trial encompassed three distinct phases:  a guilt phase trial, a jury trial to determine the competency of petitioner to continue with the then just commenced penalty phase, and a penalty phase trial.  At the beginning of the penalty phase, petitioner's trial counsel declared that they had a substantial doubt as to petitioner's competency, and based on their psychiatrist's opinion, petitioned the court to hold a competency trial pursuant to Cal. Penal Code § 1369.  After initial hesitation, the penalty phase trial judge determined that a competency trial had to be held.  See People v. Stanley, 10 Cal. 4th 764, 801-818, 42 Cal. Rptr. 2d 543, 564-575 (1995).

In California, then and now, a defendant whose competency to proceed to trial, or continue with trial, is in doubt, is entitled to a court or jury trial on the determination of his competence (jury trial if demanded, People v. Superior Court, 169 Cal. App. 3d 796, 798, 215

2

Cal. Rptr. 482, 484 (1985)), and the verdict must be unanimous.  § 1396(f).  The burden is on the party seeking a determination of incompetence, usually the defendant, to prove incompetency by a preponderance of the evidence.  See discussion of California law in Medina v. California, 505 U.S. 437, 112 S. Ct. 2572 (1992).

Petitioner's trial was especially complicated in that he did not agree with his counsel's determination to seek a determination on his competency.  Thus, an attorney was appointed to represent  petitioner's personal viewpoint, which was at odds with his regular defense counsels' position.  The prosecution opposed the defense assertion of incompetency and produced evidence to support its position.  A jury was empaneled, heard the evidence, and rendered a decision of competent.  It is not necessary to detail here all the facts of the competency trial, as only juror misconduct is at issue in these Findings.

In the Amended Petition, filed September 30, 2002, Claim 21, petitioner alleged, in part, that juror Mitts, a juror in the competency trial, had engaged in prejudicial misconduct by failing to disclose facts and her bias during voir dire as well as other misconduct.  By order of September 2, 2005, the court approved this claim for evidentiary hearing.

During the course of proceeding with this habeas petition, and in particular in proceeding with juror misconduct issues, counsel for petitioner accused one of respondent's attorneys, as well as other personnel associated with respondent, of tampering with the jurors/witnesses pertinent to the juror misconduct issues.  The court held an evidentiary hearing on this misconduct issue combined with taking evidence on the juror misconduct issues per se as well as evidence on other merits issues.

Findings and Recommendations were issued on the attorney misconduct issues, Docket 714, dated May 31, 2006, and these Findings were adopted by the district judge.  Docket 770, Order of October 13, 2006.  Respondent spends some energy on briefing why the court was wrong in finding misconduct, but nothing in the briefing would cause the undersigned to overturn this law of the case – or to doubt its correctness.  Thus, the record in this case demonstrates that

respondent's attorney *prejudicially* impacted Juror Mitts in her rendition of facts concerning

juror misconduct.  The remedy recommended by the undersigned and adopted by the district

judge was:

> With respect to Juror Mitts, all statements, declarations, and
> testimony procured commencing with the 2000 Brosterhous
> interview, and continuing to the present, should be excluded.  The
> matter of juror misconduct should be decided on the Mitts' 1997
> declaration pursuant to appropriate legal standards.

Findings and Recommendations at 31.  See also October 12, 2006, Order at 18 adopting the

Findings and Recommendations "in full."

Accordingly, the record on which the juror Mitts' misconduct is to be finally

adjudged is set forth herein:

(1)  I was a juror in the competency trial of Jerry Stanley in 1983.

(2)  I was the victim of a rape and was threatened with murder several years

before the competency trial of Jerry Stanley.

(3)  During the period prior to, and including the competency trial of Jerry

Stanley, I was repeatedly physically abused by my then husband.  I hated men during this period

of my life.

(4)  During the jury selection process of Jerry Stanley's competency trial I failed

to disclose to the court that I had been the victim of a rape, that I was being physically abused by

my husband, and that I hated men.  I lied to the court when I said that I could serve as a fair and

impartial juror and give Jerry Stanley a fair trial.  I had decided that he was guilty (sic) at the

beginning of the trial.

(5)  During the course of the competency trial, when I learned about the murder of

the young woman in Colusa County, I was overwhelmed by the bad memories of my own

experience and became afraid of Jerry Stanley.  I feared that he would rape me.

(6)  ....

\\\\\

4

(7)  During the course of the competency trial I openly discussed information disclosed during the proceedings with several other people.  I did this despite an admonition by the judge forbidding the jury to discuss the case with anyone.

(8)  During the course of the competency trial, I read newspaper accounts of the proceedings despite an admonition by the judge forbidding the jury to read newspaper articles about the case.

(9) ....

(10)  Prior to beginning deliberation in the competency trial, another juror and I discussed the case despite an admonition by the judge forbidding the jury to discuss the case among ourselves.

Mitts Declaration, September 30, 1997.

_Standard of Review_

The factual matter of Mitts' misconduct is reviewed de novo.  Although the Mitts' declaration was placed before the state supreme court, the counter declarations which have been stricken because of misconduct were also present in state court for review.  Even if there were factual findings by the state supreme court, which there were not, it would not be possible to segregate out any unknown reliance on the declarations procured through misconduct.  Thus, the court is in the analogous position of having held an evidentiary hearing on the issues of Brosterhous/Mitts' misconduct where the only facts obtained, aside from the facts of record at trial, are those obtained through the federal process.  In such a situation, the court determines the factual matter of the juror misconduct de novo and applies clearly established Supreme Court authority to those facts in order to determine the legal effect of the facts.  See Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002); see also Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002) (summary dismissal of claims cannot stand as the basis for a factual adjudication of disputed facts).

\\\\\

1    *Discussion*

2        1. <u>Actionable Juror Misconduct</u>

3            Respondent senses that he has a difficult position, and the arguments reflect that.[1]

4    Respondent's first argument attacks use of the Mitts' 1997 declaration as hearsay and unreliable.

5    First, declarations may be admitted in habeas proceedings.  28 U.S.C. § 2246.  More importantly,

6    respondent misses the import of the evidentiary hearing on attorney and juror misconduct which

7    was held, and the findings which were made.  Juror Mitts was subject to direct and cross-

8    examination (the legal equivalent, and more, of interrogatories to the declarant), and the court

9    found Mitts not to be credible in her recantations of the 1997 declaration.  After hearing

10   testimony, the court did not find that the circumstances surrounding the creation of the 1997

11   declaration made that declaration unreliable.  Moreover, as a sanction, the declaration was

12   ultimately found as the record evidence to be relied upon *because of the found attorney*

13   *misconduct*.  It was not admitted out of the blue on the request of a party.  The found attorney

14   misconduct tainted all further explanations of Mitts, including her attempted retractions on

15   examination in court.  Because the court did not find that the first declaration had been

16   ─────────────────────────

17   [1]  Typical of the hyperbole in respondent's Post-Evidentiary Hearing Brief is illustrated
     by that found on page 20:  "This court has before it a declaration purporting to be from
18   competency juror Mitts.  There is no testimony authenticating this document.  There is no
     testimony from the declarant that the document does indeed bear her signature."  However, on
19   pages 115-116 of the transcript on Evidentiary Hearing Day 1 the following questions were
     asked, and testimony was given:

20        Mr. Olive:  The first one, Petitioner's Exhibit 1, purports to be a declaration of Ms.
          Mitts from September 30th of 1977 (sic) [1997].  And it's behind the Mitts folder
21        in the proffer.
          Q.  I'd ask you to examine that document and when you're done looking at it, let
22        me know.
          The Witness [Mitts]:  I'm finished, sir.
23        Q.  All right, do you recognize that?
          A.  I do.
24        Q.  Okay, is that your signature at the bottom?
          A.  It is.
25
     And, of course, the 1997 declaration was admitted into evidence. RT (Vol. 1) 149.
26   Why respondent would make the claim he did in the briefing is unexplainable.

improperly acquired, the appropriate sanction was to rely on the declaration.  Indeed, the court

specifically found that the statements in the 1997 Mitts' declaration were not facts which could

have been planted in Mitts' mind by overzealous defense investigators.  Findings and

Recommendations, May 31, 2006 at 27, 29-30.

As stated above, the court will not repeat all its findings made after the

misconduct hearing, and will not debate with respondent those findings made.  They are the facts

and law of the case.  The only issue to be decided is whether those facts warrant an overturning

of the competency trial.

Of course, the 1997 Mitts' declaration poses different facts than do the Mitts'

answers to the voir dire questions at trial. That is usually what voir dire misconduct is about.

However, the declaration goes much further.  Mitts declared that she "failed to disclose"

important facts which were the subject of inquiry during voir dire.  She did not say that she

misapprehended the questions.  And, petitioner clearly shows the context of the Mitts' voir dire

which can lead one only to the conclusion that "failed to disclose" means exactly what it says,

i.e., Mitts knew that a line of inquiry at voir dire called for revelation about the crimes committed

upon *her* in the past, and she did not disclose them.  Petitioner's Closing Brief at 3-6.  Mitts was

present when other jurors revealed that they had been the victims of crime *in response to*

*essentially the same questions which were asked of Mitts*.  Mitts indicated in the 1997 declaration

that she *lied* when she said she could be impartial, and the lie referenced had much to do with her

undisclosed history.

The combination of the "failed to disclose" and "lied that I could be impartial" are

critical to the outcome here.  One could "fail to disclose" on voir dire perceived embarrassing

facts about one's past, but such embarrassment might have nothing to do with the ability to be a

fair and impartial juror, e.g., facts were not revealed because marital relationship complexities

might arise if certain facts were publicly revealed.  However, Mitts did not give an unrelated-to-

trial explanation; rather, she combined the two – her past history affected her ability to be a fair

1   and impartial juror – and she affirmatively knew it.  That combination is what makes her conduct

2   prejudicial.  Respondent's attempt to view each of these problematic statements in a vacuum

3   smacks of artificiality.

4      Thus, respondent's present tack is to suppose simply that there are two sworn,

5   remaining versions of Mitts' answers to critical inquires on voir dire – that of the original voir

6   dire and the 1997 declaration,  and that the court is free to choose either version.  But this tack

7   overlooks the crucial credibility determinations made at evidentiary hearing – the undersigned

8   found the facts in the 1997 declaration to be credible and the attempted recantations of that

9   declaration by Mitts not to be credible.  *The rejection of the recantations is antithetical to*

10  *acceptance of the truth of the initial voir dire assertions.* [2]   Respondent's present parsing of the

11  original voir dire and comparing it with the 1997 declaration is nothing less than a clothed repeat

12  of the credibility arguments at the evidentiary hearing, which, of course, included the intertwined

13  ultimate issue of juror misconduct as well as attorney misconduct.

14     Accordingly, the undersigned will not engage in a passage by passage rebuttal of

15  respondent's arguments and will turn to the legal issues presented by prejudicial jury

16  misconduct.[3]

17     Voir dire questions in a criminal case which explore the existence of serious crime

18  committed against the potential juror are important questions.  Certain experiences may so color

19  a juror's views that it will be nearly impossible to think impartially in a jury setting when a

20  similar crime has been attributed to the defendant.  A verdict that helps the person accused of this

21

22   [2]  Obviously, if the undersigned thought that there was great doubt about the veracity of the 1997 declaration, as a result of facts obtained at the evidentiary hearing, including review of

23  the original version of the voir dire which was of record, the undersigned would never have found the Brosterhous misconduct to have been prejudicial, nor would the undersigned have

24  recommended that the factual basis of Mitts juror misconduct be found in the 1997 declaration.

25   [3]  The further misconduct evidenced by the 1997 declaration enhances the problems created by Mitts' inability to be impartial, and it enhances the prejudice.  That misconduct, e.g.,

26  talking about the case outside of deliberations, should not be viewed entirely separately.

1    crime, even a finding of incompetency, will be hard to deliver if called for.  Moreover, when a

2    potential juror fails to admit being the victim of a crime, the inference that such a crime had a

3    very significant impact on the victim is nearly unavoidable.  When one discloses the fact of the

4    crime, at least that disclosure itself reveals that the person *might* be able to put the event out-of-

5    mind.  To deliberately withhold information during voir dire is serious misconduct.  Binding case

6    law bears this out.  Dyer v. Calderon, 151 F.3d 970 (9th Cir. 1998) (en banc) was itself a case

7    involving a juror who had not been truthful about being the victim of a crime, a crime in which

8    her brother had been shot.  After finding that the juror had been untruthful about this incident

9    (she had not initially disclosed it on voir dire), the Ninth Circuit found that the deliberate

10   falsehood given by this juror precluded her from being fair and impartial: "a perjured juror is as

11   incompatible with the truth-seeking process as a judge who accepts bribes."  Id. at 983.[4]  Thus,

12   the fact that Mitts committed serious juror misconduct is unavoidable.

13           Nor must the court simply infer that Mitts lied from the circumstances associated

14   with her declaration as opposed to her in-court testimony.  She specifically admitted it.  " I lied to

15   the court when I said that I could serve as a fair and impartial juror and give Jerry Stanley a fair

16   trial."  No conduct on the part of the federal defender investigators was revealed at hearing which

17   would have prompted such an admission.  It is counterintuitive to believe that a person would

18   make up such a statement against interest.  The facts do not show that this witness had a change

19   of heart over the death penalty or some other ulterior motive which might have caused a

20   fabricated declaration.  The undersigned previously rejected her post hoc, make weight excuses

21   in attempting to recant the statements in the declaration.  Findings and Recommendations, May

22   31, 2006 at 28-29.  Moreover, juror Mitts previous experience as the victim of a serious crime

23   \\\\\

24

25       [4] Although Dyer was not an AEDPA case, it was based on clearly established Supreme
     Court authority.  AEDPA cases have no difficulty in citing Dyer.  See e.g., Green v. White, 232
26   F.3d 671, 677-678 (9th Cir. 2000).

                                                     9

1   later in the voir dire "overwhelmed  her" to the point where she "became afraid" of petitioner.[5]

2          In McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 104 S. Ct. 845

3   (1984), the court held that trials could not be made perfect, and that the time and resources

4   invested in the initial trial, especially that of the jurors, should not be tossed away in the quest to

5   rectify technical errors.  The undersigned could not agree more.  Moreover, as discussed at length

6   below, the potential for not being able to re-do a trial makes the need to assess the harmfulness of

7   an error more important.  However, McDonough, a civil case, also held that:

8              We hold that in order to obtain a new trial in such a situation, a
               party must first demonstrate that a juror failed to answer honestly a
9              material question on *voir dire*, and then further show that a correct
               response would have provided a valid basis for a challenge for
10             cause.

11  Id. at 556, 104 S. Ct. At 850.

12         In this case, it can hardly be doubted that a juror's admission that she failed to

13  disclose important facts which were called for on voir dire constitutes a dishonest response.  Of

14  course, an admission that the juror "lied to the court," leaves nothing to be decided in this regard.

15  When the lie involves the juror's ability to be impartial, again nothing is left to be analyzed with

16  respect to whether such would constitute cause for removal from the jury – of course it would.

17  Under McDonough a re-trial is required.

18         The analytical result is no different when reviewing pertinent habeas cases.  Under

19  Dyer and Green v. White, 232 F.3d 671, 676-677 (9th Cir. 2000), prejudice may be presumed

20  from a juror's concealment of information "where the juror's actions create 'destructive

21  uncertainties' about the indifference of a juror[.]"  Green v. White, 232 F.3d at 677 quoting Dyer

22

23  _____

24         [5]  Respondent makes much of the juror Mitts statement that she believed petitioner
    "guilty" at the commencement of the trial.  As all know, Mitts was deciding competency, not
    guilt.  However, not only does this statement make it less likely that Mitts' declaration was
25  fabricated by experienced defense investigators who would have known that Mitts was involved
    in a competency trial, the court understood the statement to mean that she would find in whatever
26  manner which she felt detrimental to petitioner.

1   at 983.[6]  In <u>Dyer</u>, as discussed above, the court was concerned about the lack of indifference a

2   juror would possess when that juror lied during voir dire.  The undersigned could presume a lack

3   of indifference here, but even that is unnecessary.  Juror Mitts exhibited actual bias of the type

4   which would undoubtedly disqualify her from sitting on the jury.  <u>See</u> <u>Smith v. Phillips</u>, 455 U.S.

5   209, 102 S. Ct. 940 (1982) (actual bias, i.e., a bias that affects the fairness of the proceedings,

6   violates the Sixth Amendment).

7           There are few smoking guns regarding actual bias which could smoke more than

8   Mitts' statement that she lied when she said she could be impartial.  The lack of impartiality is the

9   establishment of actual bias.  Her experience with crime and her marital difficulties affected her

10  so seriously that "she hated men."  If these statements do not establish actual bias, than nothing

11  can.  <u>See</u> <u>United States v. Torres</u>, 128 F.3d 38, 44 (2nd Cir. 1997) (statement by a juror that he or

12  she could not be impartial demonstrates actual bias).  <u>See</u> <u>also</u> <u>United States v. Gonzalez</u>, 214

13  F.3d 1109, 1112 (9th Cir. 2000) (actual bias is "the existence of a state of mind that leads to an

14  inference that the person will not act with entire impartiality).  Here no inference is needed

15  because the lack of impartiality was directly set forth.

16          Having found prejudicial juror misconduct, the non-revelation of facts which

17  would have surely caused juror Mitts to have been discharged for cause, the issue becomes one of

18  appropriate remedy.

19          2. <u>Appropriate Remedy</u>

20          Petitioner assumes and concludes that the only appropriate remedy is a finding that

21  there can be no retrospective competency hearing, and therefore the penalty phase, which was

22  completed after the competency trial, must fall.  Respondent recognizes the very difficult issues

23  and briefs them.  The issues revolve about whether sufficient information exists regarding a

24  retrospective competency hearing [trial] which would overcome the usual reluctance to hold such

25  _____

26          [6]  <u>Green</u> involved, in part, a juror's untruth about his criminal history.

1    a retrospective hearing, and who makes the decision.

2                Generally, courts believe that retrospective competency hearings are not favored in

3    arriving at accurate competency findings for a time period long since removed from the present.

4    Drope v. Missouri, 420 U.S. 162, 183, 95 S. Ct. 896 (1975).  California's statutory jury trial right

5    in this regard makes such a hearing more problematic.  The specter of petitioner's testimony at

6    such a trial, given his conduct in this case, is unpredictable and very uncertain in its value.  These

7    would be problems enough, however, the passage of years, 24 and counting, which the jury would

8    have to peel away makes an accurate decision nearly not possible.

9                On the other hand, although the remedies in federal habeas corpus are flexible, and

10   no absolute requirement exists to give the state the choice of re-trial regardless of the

11   circumstances, see 28 U.S.C. § 2243; Hertz, Liebman, *Federal Habeas Corpus Practice and*

12   *Procedure* (5th ed 2005) Chapter 33, federal courts remand for re-trial in the vast majority of

13   habeas cases.  In competency cases, the remand is made for the initial purpose of permitting the

14   state courts to consider themselves whether a competency re-trial is possible.  Odle v. Calderon,

15   238 F.3d 1084 (9th Cir. 2001) presents such a situation.

16               Odle was a person who had suffered organic brain damage– missing a piece of his

17   brain "the size of a grapefruit."  Id. at 1089.  Not surprisingly, Odle had a checkered mental health

18   history subsequent to his trauma.  No one at trial questioned Odle's competency, however.

19   Nevertheless, the Ninth Circuit found that the trial judge, fully informed about Odle's mental

20   problems, should have maintained a doubt about Odle's competency sufficient to require a

21   competency proceeding under California law.  In ordering a remand to the California courts, Odle

22   found:

23               The state court can nonetheless cure its failure to hold a competency
                 hearing at the time of trial by conducting one retroactively.  We
24               have said that retrospective competency hearings may be held when
                 the record contains sufficient information upon which to base a
25               reasonable psychiatric judgment.  See De Kaplany, 540 F.2d at 986
                 & n. 11; see also Moran, 57 F.3d at 696.  Although many years have
26               passed since Odle was convicted and sentenced, the state trial court

                                                      12

should be able to "adduce sufficient evidence" to determine whether Odle was competent to stand trial.  Evans v. Raines, 800 F.2d 884, 888 (9th Cir.1986).  FN7.  Expert witnesses who testified at trial, as well as experts who have since examined Odle, submitted declarations describing Odle's mental state at the time; defense counsel and an investigator submitted declarations describing Odle's behavior during trial proceedings.  Moreover, medical records, psychiatric reports and jail records submitted at trial are still available.  Given this old and new evidence, "it is not unreasonable to conclude that a fair retroactive hearing could be ... conducted."  De Kaplany, 540 F.2d at 986 n. 11.

> FN7. If the state trial court concludes that it is unable to conduct a retrospective competency hearing, then the conviction must be set aside.

We therefore remand the case to district court with instructions to grant the writ unless the state trial court conducts a hearing within sixty days to determine whether Odle was competent at the time he stood trial.  See Miles, 108 F.3d at 1114.  The district court shall retain jurisdiction.  If the state court vacates the conviction, the district court shall dismiss the habeas petition.  If it upholds the conviction, the district court shall review the state court's determination consistent with this opinion.  We retain jurisdiction over the case and, if the competency claim is ultimately resolved against him, we will review Odle's remaining four claims as to which we grant the COA.  See Morris, 229 F.3d at 781.

Odle, 238 F3d at 1089-1090.

Odle was convicted in 1983 – the same year the competency jury rendered its verdict in petitioner Stanley's case.  However, Odle was remanded in 2001 for the competency determination, and it is now six years past that date.  Assuming an appeal of the district court decision in this case, should the district judge adopt these Findings after objections, the California courts would be looking at an approximate 27 year old competency issue.

In California, People v. Ary, 118 Cal. App. 4th 1016, 13 Cal. Rptr. 3d 482 (2004), stands as a very thoughtful case on the possibility of retrospective competency hearings.  Citing applicable law, Ary decided that "it is the rare case in which a meaningful retrospective competency determination will be possible."  The case also determined that for the legal threshold issue of whether a competency trial could now be held the state bore the burden of persuasion.  Id. at 1029, 118 Cal. App. 4th at 493.  Factors involved in that decision include the availability of the

13

1    experts who testified at the initial trial proceedings (either at a competency hearing or for some

2    other reason germane to the trial), and the state of the record medical evidence.

3            As is certainly apparent from <u>Drope</u>, in which the *federal* court found the non-

4    possibility of an accurate retrospective hearing for a state case, this court is not required to remand

5    the issue of feasibility of a retrospective competency hearing to state court.  There are reasons for

6    a final determination to be made now:  the passage of time, the silence of respondent on the

7    availability of his experts, the death of one of the defense competency attorneys and the essential

8    lack of recollection of the other defense attorney; the lack of recollection by petitioner's attorney

9    representing petitioner's then desire to be found competent (Blake), the probable predominance of

10   read-back testimony as opposed to live testimony.  Not the least of the problems, petitioner's

11   retrospective testimony, should he care to testify, would be problematic in general and in its

12   foundation.  The undersigned is concerned whether a competency trial, difficult enough for a jury

13   when done concurrently with the alleged incompetency, could feasibly be given to a jury for a

14   quarter century retrospective decision.

15           On the other hand, the medical issues were more or less fully developed in 1983,

16   and the medical records should still exist.  Petitioner's expert who testified against his

17   competency, and at the penalty phase (Axelrad), exhibited  a remarkable memory of the events

18   surrounding the 1983 trial during the evidentiary hearing in this case.  Moreover, at evidentiary

19   hearing, present day experts were able to render present opinions on long past medical issues

20   pertinent to the penalty phase; they will probably be able to do the same for a retrospective

21   competency trial.

22           In addition, <u>Odle</u> appears to set a preference for state court determination of the

23   threshold issue of whether a retrospective competency trial is possible in the first instance.  Where

24   there are competing factors weighing in favor of and contrary to a retrospective competency

25   hearing, the undersigned agrees that the state courts should be the decision makers in state actions.

26   \\\\\

1    Therefore, should the underlying Findings and Recommendations herein be

2 adopted, the undersigned recommends that partial final judgment, pursuant to Fed. R. Civ. P.

3 54(b)[7] be entered when the guilt phase issues have also been decided.[8]  At that time, the court

4 should hold in abeyance the remaining competency trial issues and the penalty phase issues.

5 Should the matter be appealed and affirmed, or if no appeal is taken, the state courts should make

6 the initial determination of the feasibility of holding a retrospective competency trial.  Should the

7 state court determine that such a trial is not feasible, that decision will moot the remaining

8 competency trial and penalty phase issues.  Should the state courts determine that a trial is

9 feasible, but petitioner is subsequently found incompetent, the same remaining issues will be

10 mooted.

11    If however, petitioner is found competent, the remaining competency trial issues

12 from 1983 will still be mooted.  This court may expeditiously adjudicate the remaining penalty

13 phase issues, and enter final judgment in this habeas action.

14    The undersigned recommends this procedure because time is of the essence in

15 holding any retrospective competency trial, indeed, if one can still be held at this time.  Deciding

16 all the penalty phase issues will undoubtedly, substantially delay any determination of a re-trial on

17 competency.  Further, the recommended procedure is entirely consistent, if not identical in

18 substance, with the remedy devised in Odle.  Finally, this court is concerned about its own

19 resources; adjudication of all issues at this time may involve a needless, lengthy review of issues.

20 \\\\\

21 \\\\\

22

23    [7]  If properly certified, a Rule 54 (b) judgment is appealable.  Pedrina v. Chun, 987 F.2d

24 608, 610 (n. 4) (9th Cir. 1993).  For the reasons expressed in the text, there is no just reason for delay of judgment on this claim of Mitts' juror misconduct, and judgment on this claim should be entered forthwith, if these Findings are adopted.

25

26    [8]  The district court need not decide all habeas issues prior to judgment if one or more of the issues decided may be dispositive.  Blazak v. Ricketts, 971 F.2d 1408 (9th Cir. 1992).

1   The undersigned and the district judge can more profitably devote these resources to other actions

2   and other persons/entities.[9]

3   *Conclusion*

4          The Juror Mitts competency trial, juror misconduct issue, Amended Petition,

5   Claim 21 (in part), should be resolved in petitioner's favor and procedurally disposed of as set

6   forth above.

7          These findings and recommendations are submitted to the United States District

8   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9   days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within ten days after service of the objections.  The parties are advised

13  that failure to file objections within the specified time may waive the right to appeal the District

14  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15  DATED: 4/10/07

16                                           /s/ Gregory G. Hollows
                                      _____
17                                           GREGORY G. HOLLOWS
                                             U.S. MAGISTRATE JUDGE

18  stan1500.competence

19

20

21

22

23

24          [9] Of course, the undersigned has recognized that adjudication of a penalty phase issue at
    this time in petitioner's favor would moot the need to hold a competency re-trial.  However, after
25  evidentiary hearing, in a very tentative fashion, and certainly without precluding the undersigned
    from changing views, the undersigned has determined that no such successful penalty phase issue
26  likely exists.  The undersigned also tentatively has found the lack of merit to a guilt phase,
    competency determination in petitioner's favor.