UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GERALD F. STANLEY,

        Petitioner,

    v.

ROBERT S. AYERS, Acting Warden
of San Quentin State Prison,

        Respondent.

NO. CIV. S-95-1500 FCD GGH DP

DEATH PENALTY CASE

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the parties' objections[1] to the magistrate judge's findings and recommendations ("F&R") of August 29, 2007 (Docket #817), adjudicating petitioner's guilt

/////

---

[1] Following various grants of extensions of time to respond, petitioner filed his objections on November 2, 2007 (Docket #827), and respondent filed his response thereto on December 21, 2007 (Docket #838). The court set the matter for hearing on February 22, 2008; however, finding that oral argument would not be of material assistance, the court ordered the matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

phase habeas claims.[2]  In accordance with the provisions of 28 U.S.C. section 636(b)(1)(C) and Eastern District Local Rule 72-304, this court has conducted a *de novo* review of this mater. Having reviewed the entire file, the court finds the F&R to be supported by the record and by proper analysis.  It therefore adopts the magistrate judge's conclusions as stated in the F&R of August 29, 2007.[3]  The court writes briefly below only to clarify the issues that are properly before the court and consider petitioner's central objections.[4]

**A.   Application of Rule 54(b)**

As they did previously, both petitioner and respondent urge the court to forego entering partial judgment under Rule 54(b) and direct the magistrate judge to consider all remaining competency and guilt phase claims prior to any remand to the state court for a retrospective competency hearing.  For the reasons discussed in the court's order of July 24, 2007 (Docket

---

[2] The court's previous order of July 24, 2007 (Docket #816), adopted the magistrate judge's recommended procedure to enter partial judgment as to the competency trial juror misconduct claim and to stay all other competency and penalty phase claims, following the court's review of these guilt phase claims.  As this order finally adjudicates all of petitioner's guilt phase claims, entry of partial judgment is made as contemplated by the court's July 24, 2007 order.

[3] In some limited respects noted below, the court declines to adopt certain rationales for the magistrate judge's conclusions.  That decision, however, does not impact the court's ultimate holding to adopt in full the magistrate judge's recommendation to deny petitioner's guilt phase claims in their entirety.

[4] Respondent does not oppose the F&R except as to the entry of partial judgment under Rule 54(b).  (See Resp't's Combined Non-Opp'n & Opp'n to Pet'r's Objections, filed Dec. 21, 2007 (Docket #838).)

2

#816), the court considers only petitioner's objection.

Petitioner contends the court's previous order, filed July 24, 2007, adopting the magistrate judge's recommendation that partial judgment be entered upon resolution of the guilt phase claims, is not supported by "specific findings" setting forth the reasons for certifying partial judgment. The court does not agree that its prior order was inadequate in this regard but writes herein to emphasize the propriety of its earlier ruling.

There are two factors to consider in ordering a Rule 54(b) certification. Curtis-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 10 (1980). First, the court must consider the overlap of factual and legal issues between those claims disposed of under Rule 54(b) and those still pending before the trial court. Id. Second, the court must assess the equities that weigh in favor and against certification. Id. The Ninth Circuit has elaborated on these inquiries to require "specific findings" setting forth the reasons for certifying judgment under Rule 54(b). Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962, 965 (9th Cir. 1981).

With regard to the first factor, petitioner asserts there is significant overlap between the issues disposed of by the instant F&R and those still pending before this court precluding certification under Rule 54(b). The court acknowledges that many of the deferred claims overlap with the disposed claims in some respects. However, there is no requirement that Rule 54(b) claims be separate from and independent of other claims. See Alcan Aluminum Corp. v. Carlsberg Financial Corp., 689 F.2d 815, 817 (9th Cir. 1982) (citing Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 450-52 (1965)); see also

3

Blazak v. Ricketts, 971 F.2d 1408, 1413 (9th Cir. 1992) (refusing to hold that Rule 54(b) cannot apply to habeas cases). As the Ninth Circuit has noted,

> Both the Supreme Court and our court have upheld certification on one or more claims despite the presence of facts that overlap remaining claims when, for example, counterclaims are involved that arise out of the same transaction or occurrence as the certified claim, or the case is complex and there is an important controlling legal issue that cuts across (and cuts out or at least curtails) a number of claims.

Wood v. GCC Bend, LLC, 422 F.3d 873, 882 & n.5 (9th Cir. 2005) (citing cases). The court is therefore not persuaded the presence of overlapping facts and issues alone is dispositive of a Rule 54(b) certification.

Considering the second factor, the court concludes the equities in this case weigh in favor of partial certification. Certifying the guilt phase claims, along with Claim 21(a) as to the competency phase claims, could prove dispositive. On remand, a state court determination that petitioner was incompetent at the time of trial, or that a retrospective competency hearing is infeasible, would mandate overturning petitioner's death penalty conviction, effectively disposing of petitioner's remaining claims. Petitioner's deferred claims will require resolution only if the state court determines petitioner was competent at the time of trial. The state court's determination could therefore save this court scarce resources and result in final adjudication of the matter for the parties.

Moreover, there is a pressing need to remand these proceedings immediately to the state court for a determination of the feasibility of a competency hearing. Cf. Curtis-Wright, 446

4

U.S. at 6-7 (reversing denial of Rule 54(b) certification where defendant would lose a significant amount of money unless the appeal was heard immediately rather than at the end of trial). The court sympathizes with petitioner's and respondent's desire to resolve all the issues raised in the petition. However, it has been more than twenty years since petitioner's trial and the lapse of even a few months more could further jeopardize a retroactive competency determination. Accordingly, the court agrees with the magistrate judge that certification under Rule 54(b) is appropriate in this case.

**B.   Procedural Default**

Petitioner objects to the magistrate judge's findings that Claims 1(3)(d) and 1(3)(g) are procedurally barred under In re Dixon, 41 Cal. 2d 756 (1953). However, as these claims relate to other competency phase issues, the magistrate judge deferred briefing and adjudication of these claims pending the outcome of the competency proceedings in state court. (F&R at 10:8, 18-19.) The court thus declines to address petitioner's objections at this time.[5]

**C.   Trial Incompetence**

   **1.   Denial of Due Process**

Petitioner objects to the magistrate judge's finding with respect to Claim 22, regarding the trial court's failure to hold

---

[5] Nevertheless, the court notes that to the extent the magistrate judge suggested Claim 1(3)(d) is procedurally barred under Dixon, this contradicts a prior court order. (See Order Regarding Evidentiary Hr'g Issues (Docket #524), filed Sept. 2, 2005, at 6 n.5.) This inconsistency may simply be the result of a clerical error. The magistrate judge previously found Claim 1(3)(c) and 1(3)(d) were not procedurally barred. (Id.) The F&R reflects as much with respect to Claim 1(3)(c). (F&R at 10:1-4.)

5

a competency hearing earlier in the proceedings.  Generally, a trial court errs in failing to recognize *sua sponte* that a competency hearing is necessary if the record before the trial court indicates the judge should have had a bona fide doubt about the competency of the defendant.  Pate v. Robinson, 383 U.S. 375, 385 (1966); see Dusky v. United States, 362 U.S. 402, 402 (1960) (defining "competent" as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him").  Petitioner argues there were numerous indications before the trial judge that a competency hearing was necessary.  The court agrees there were numerous incidents that, *if* before the trial court, would have collectively raised a bona fide doubt as to petitioner's competency.  The problem with petitioner's argument is that many, if not most, of these incidents were never brought to the attention of the trial court.

It appears from the record petitioner's potential incompetence was raised only two or three times before the trial judge, when petitioner's counsel remarked *in passing* that he had considered requesting a "1368 hearing."  (F&R at 19:14-20, 20:2-15 (quoting record).)  Each time the court pressed counsel about the matter, counsel unequivocally stated petitioner was competent.  (F&R at 20:2-11 (quoting record).)  The only other incident in the record is a conversation between counsel and the judge regarding petitioner's anxiety medication.  However, this conversation concerned petitioner's emotional well-being, not his mental health.  (See F&R at 20:2-11 (quoting record).)  Details

6

about petitioner's history of problems, stay at a medical facility, and alleged inability to assist counsel were never raised. The vague references to petitioner's incompetency at trial and need for anxiety medication, without more, was not enough to raise a reasonable doubt in the mind of the trial judge as to petitioner's competency. Indeed, the trial judge noted on the record that he had not observed any behavior on the part of petitioner that would lead him to doubt petitioner's competency. (F&R at 20:12-14 (quoting record).) Therefore, the magistrate judge properly denied Claim 22.

### 2. Ineffective Assistance of Counsel

Petitioner alleges the magistrate judge incorrectly denied relief on Claim 1(3)(b) relating to ineffective assistance of counsel. In order to establish a claim for ineffective assistance of counsel, petitioner must show (1) the performance of counsel was deficient, i.e., counsel's performance was unreasonable under the circumstances; and (2) a reasonable probability that but for counsel's errors the result of the proceedings would have been different. Stickland v. United States, 466 U.S. 668, 687, 688, 694 (1984). Petitioner objects to the magistrate judge's determination trial counsel made a "tactical" decision not to request a competency hearing earlier. However, there is ample evidence in the record to support the magistrate judge's conclusion. Lead trial counsel, Mr. Neill, himself indicated at the state competency trial that he did not want to present petitioner to the jury as incompetent. (F&R at 28:15-21 (quoting record).) Mr. Peterson, petitioner's trial co-counsel, further testified petitioner had "pride" and did not

7

want to be presented as incompetent. (Pet.'s Closing Brief, filed Dec. 14, 2006, at 29:21-22 (citing record).) Thus, the record supports the conclusion counsel made a conscious decision to present petitioner to the court as competent.

While counsel is permitted to make tactical decisions, such decisions must be reasonable to overcome an ineffective assistance claim. Here, the court cannot say counsel acted unreasonably by deciding not to request a competency hearing earlier in the proceedings. Dr. Axelrad, petitioner's primary expert, told counsel at the time of trial that petitioner was competent and could maintain competency through the efforts of counsel. (F&R at 30:18-26 (quoting record).) Although counsel's and petitioner's viewpoints increasingly diverged during the proceedings, they were always able to "work it out." (F&R at 31:9-20 (quoting record).) Further, there were sound reasons for wanting to present petitioner as competent until serious doubts about his competency arose. As the magistrate noted, there is a certain stigma associated with a finding of incompetence. Further, the jury could have inferred guilt if counsel moved to determine petitioner was incompetent, which would have undermined petitioner's "the other guy did it" defense. Accordingly, the magistrate judge properly concluded the decision not to request a competency hearing earlier in the litigation was "tactical" and not manifestly unreasonable given the circumstances.

Even assuming trial counsel's decision was unreasonable, petitioner has failed to proffer sufficient evidence of prejudice to his case. Petitioner acknowledges that neither Dr. Reus, the state's post-conviction expert, nor Dr. Woods, petitioner's post-

8

conviction expert, could make a determination of petitioner's competency during trial.  Also, Dr. Axelrad testified, at petitioner's trial, he told counsel petitioner was competent, although he cautioned significant effort on the part of counsel was required to maintain competency.  (F&R at 30:18-26 (quoting record).)  It was not until the evidentiary hearing before the magistrate judge that Dr. Axelrad concluded, for the first time, petitioner was incompetent as of 1981.  (F&R at 30:7-15 (citing record).)  The magistrate judge properly rejected this testimony as incredible in light of the expressed contrary opinions of Dr. Axelrad *at the time of trial*.

    Petitioner attempts to bolster Dr. Axelrad's recent opinion with evidence of childhood abuse, family history of mental illness, and incidents of odd behavior on the part of petitioner during the trial.  The facts regarding childhood abuse and family history of mental illness speak to petitioner's susceptibility to mental illness, not a reasonable probability he was incompetent at the time of trial.  Also, the fact trial counsel found it difficult to deal with petitioner at times or petitioner acted strangely during proceedings is not so unusual as to indicate incompetency.  As the magistrate judge noted, many defendants are difficult and display odd behavior, particularly as the proceedings progress and a judgment becomes imminent.  In the end, the court recognizes, as did the magistrate judge, that petitioner's ineffective assistance of counsel claim is a close call.  However, the court agrees with the magistrate judge the evidence is not sufficient to establish Claim 1(3)(b).

D.  **Mental Health Defenses**

Petitioner also challenges the magistrate judge's findings as to Claim 24, specifically that portion of Claim 24 relating to whether mental health issues constituted a complete defense to the charges. The magistrate judge disposed of this claim primarily on the ground that petitioner failed to produce sufficient evidence to support the claim at the evidentiary hearing.[6] However, petitioner correctly notes the magistrate judge previously denied petitioner an evidentiary hearing on this claim. Based on that ruling, petitioner did not proffer evidence on this issue. While the magistrate judge overstated his conclusions, it remains that petitioner failed to proffer enough evidence to support holding an evidentiary hearing in the first instance. Petitioner was given an opportunity to brief his entitlement to an evidentiary hearing on this claim, and a hearing was held on petitioner's motion. (See Pet'r's Mot. for Evidentiary Hr'g (Docket #502), filed Apr. 8, 2005, at 56:3-6; Mins. for Mot. Hr'g (Docket #519), filed Aug. 15, 2005.) The magistrate judge denied an evidentiary hearing, finding: "Petitioner collectively asserts herein that petitioner's mental deficits indicates that he is 'not guilty,' i.e., actually innocent . . . . [That] claim is not actionable on latter day expert opinion, Boyde v. Brown, 404 F.3d at 1168." (See Order

---

[6] The court agrees with petitioner that, contrary to the magistrate judge's finding, the defense of diminished capacity would be available in the event of a retrial. See People v. Carpenter, 15 Cal. 4th 312, 395 n.6 (1997) (abolition of defense of diminished capacity does not apply retroactively); In re Pensinger, 52 Cal. 3d 1210, 1241 (1991) (diminished capacity defense still available for crimes occurring prior to January 1, 1982).

10

Regarding Evidentiary Hr'g Issues (Docket #524), filed Sept. 2, 2005, at 27:8-11.)  Thus, this claim is properly denied on law of the case grounds and, accordingly, this court adopts the magistrate judge's conclusion denying this claim.

**E.     Fourth Amendment Violation**

    **1.     Full & Fair Opportunity**

Petitioner also objects to the magistrate judge's analysis of Claims 4 and 5, regarding whether petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.  As found by the magistrate judge, petitioner's argument is unavailing.

Stone v. Powell, 428 U.S. 465 (1976), bars consideration of Fourth Amendment claims on collateral review if the state courts considered the claims fully and fairly.  Petitioner does not deny he received full and fair consideration of his claims in the trial court and on writ to the court of appeal. Rather, petitioner argues the state supreme court denied meaningful direct review by applying the doctrine of law of the case. Petitioner fails to acknowledge, however, the California Supreme Court applied law of the case *after* reviewing the court of appeal's decision for "manifest misapplication of existing principles resulting in substantial prejudice." People v. Stanley, 10 Cal. 4th 764, 787 (1995).  Applying this standard, the court concluded the court of appeal correctly rejected petitioner's Fourth Amendment claims.  Id. at 788-89.  Thus, although "by definition" law of the case does not provide meaningful review, in substance, the state court considered and rejected petitioner's objections to the suppression analysis of

11

petitioner's Fourth Amendment claims.  The magistrate judge therefore did not err in barring review of Claims 4 and 5.

### 2. Judicial Bias

Petitioner takes issue with the magistrate judge's rejection of a subpart of Claim 4, relating to judicial bias. Specifically, petitioner claims he was denied an evidentiary hearing on his allegations. Petitioner is correct that the magistrate judge denied an evidentiary hearing. This denial was based on petitioner's failure to present a "colorable" claim to justify such a hearing. See Blackledge v. Allison, 431 U.S. 63, 81-82 (1977) (district judge can employ various measures to avoid an evidentiary hearing, including testing whether facially adequate allegations have sufficient basis in fact to warrant presentation of evidence). Petitioner cannot complain about the lack of an evidentiary hearing when he failed to produce evidence to support holding such a hearing.

### F. Special Circumstance Finding

Petitioner next argues the magistrate judge erred in finding the California Supreme Court procedurally barred Claim 13, concerning severance of the guilt phase trial and the witness killing special circumstance trial, based on an adequate and independent state law ground.

The California Supreme Court declined to sever petitioner's trial for two reasons.  First, the court reasoned:

> [I]n this case defendant did not base his severance motion on the grounds he now advances. Rather, he sought severance to prevent the introduction of evidence concerning the nature of the charges brought by [the victim] against him and witnessed by her[.] . . . At no time did the defense suggest severance was necessary to permit defendant to present the

12

>     inconsistent defenses of alibi to the murder charge and
>     of "I killed her for love, not because she was a
>     witness" to the special circumstance allegation.

Stanley, 10 Cal. 4th at 798-99.  Petitioner argues there is "simply no statement, plain or otherwise, indicating that the state court refused to address the merits of Petitioner's claim" in the above passage.

However, petitioner ignores the second basis of the Court's decision that clearly satisfies the plain statement requirement. The California Supreme Court also rejected Claim 13 because "section 190.1 [of the California Penal Code] provides for a unitary trial of guilt and special circumstance issues, except as therein provided." Id. at 799.  The court went on to find none of the exceptions applied to petitioner's case.  Id.  The magistrate judge was therefore justified in refusing to consider Claim 13, disposed of on an adequate and independent state law ground.

## G.    **Malice Instruction**

Finally, petitioner objects to the magistrate judge's analysis concerning Claim 20, regarding the state trial court's jury instruction for malice.  Petitioner argues the magistrate judge failed to review this claim under In re Winship, 397 U.S. 358 (1970) (holding all elements of a crime must be proven beyond a reasonable doubt).  Petitioner is incorrect.  The magistrate judge expressly stated "the federal requirement to prove all elements of a crime, as defined by state law, beyond a reasonable doubt."  (F&R at 46:5-7.)  The magistrate judge then properly agreed with the California Supreme Court's analysis of the issue,

13

finding the jury instruction did not violate In re Winship.

Petitioner argues the trial court's jury instruction on malice permitted the jury to erroneously find malice merely upon a showing of specific intent to kill. At the time of petitioner's offense, "[a]n awareness of the obligation to act within the general body of laws regulating society" was included in the definition of malice. Stanley, 10 Cal. 4th at 796 (citing People v. Conley, 64 Cal. 2d 310, 322 (1966)); see In re Christian S., 7 Cal. 4th 768, 775 (1994) (noting the California Legislature later amended Penal Code section 188 so that "an awareness to act within the general body of laws governing society" was not included in the definition of malice). The jury was instructed that express malice included "an intention *unlawfully* to kill a human being." Stanley, 10 Cal. 4th at 796 (emphasis added). The California Supreme Court concluded the jury instruction did not permit the jury to equate intent to kill with malice because it required consideration of petitioner's duty to conform his conduct to the law. Id. The Court further found no amplifying instruction was necessary because petitioner failed to present evidence that his mental state precluded his ability to understand this duty. Id. at 797. As the malice instruction did not erroneously permit the jury to find malice if petitioner manifested a specific intent to kill, the magistrate judge properly denied Claim 20.

## CONCLUSION

For all of the above reasons, the court adopts the magistrate judge's conclusions as stated in the F&R of August 29, 2007, thereby denying the entirety of petitioner's guilt phase

14

habeas claims. As recommended therein, this court orders as follows:

All guilt phase claims, including competency to stand trial at the guilt phase, are decided in favor of respondent. The court hereby enters partial judgment pursuant to Federal Rule of Civil Procedure 54(b) in favor of respondent as to Claims 1(a), 1(b), 4, 5, 13, 19, 20, 22, 23, 24, and 26, as those claims in whole or in part relate to the guilt phase. For the reasons previously stated by the court (see Docket #816), partial judgment in favor of petitioner is entered as to Claim 21(a) regarding juror misconduct during the competency trial. The remainder of the competency and penalty phase claims are stayed pending a determination of the competency phase proceedings in state court. Respondent is hereby ordered to commence state court proceedings on the issue of whether to hold a retrospective competency hearing within thirty days after judgment is entered.

IT IS SO ORDERED

DATED: March 17, 2008

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE